NEW-YORK,<br>May, 1832.<br><br>Mitchell<br>v.<br>Hinman.

Judgment reversed.

---

MITCHELL, *qui tam &c. vs.* HINMAN, sheriff of Oneida.

A *defendant* in *replevin* may interpose a claim of property in the thing of which deliverance is sought, although he be not the *possessor* thereof.

A party having a *special property* in the thing, and in *possession* of the same, is equally with the *general owner* entitled to interpose such claim.

The possession of a *receiptor* is the possession of the officer who entrusted the property to his charge.

The sheriff has no discretion whether he will or will not regard a claim of property made by the *defendant* in the replevin, or by the *possessor ;* if the claim be made, he must desist from making a deliverance until it be inquired into by a jury, under a writ *de proprietate probanda.*

A sheriff is not authorized to make deliverance until *after summons* of the defendant in *replevin ;* and a claim of property interposed at the time of summons is in season.

A witness is not bound to answer as to how he testified on a former trial relative to the matters in question, if he objects to the inquiry.

THIS was an action of debt, against the sheriff, to recover the penalty given by the statute to prevent abuses in the action of *replevin,* for making deliverance of property without trying the right on a claim being interposed, tried at the Oneida circuit in April, 1830, before the Hon. NATHAN WILLIAMS, one of the circuit judges.

The declaration charged the making of deliverance of two horses, by virtue of a plaint in replevin, at the suit of George Simmons, against Eleazer Green and Tyler Mitchell, notwithstanding a claim of property and notice thereof to the deputy sheriff, without such claim being inquired into or tried accor-

NEW-YORK, May, 1832.

Mitchell
v.
Hinman.

ding to law. There were three counts : in the first it was alleged that the horses were in the possession of Green, one of the defendants in the plaint, and that he claimed property and gave notice ; in the second, that they were in the possession of both Green and Mitchell, the defendants in the plaint, and that they made claim, &c.; and in the third count it was alleged that the horses were in the possession of Mitchell, one of the defendants, &c. and that he made claim, &c. On the trial of the cause, it appeared that the horses in question had been levied upon by *Green*, as a constable, by virtue of a justice's execution, in favor of one Mayland, against *Eliphalet Simmons*, and had been put into the possession of one *Roberts*, who had become *receiptor* for the same to the constable, who had advertised them for sale on the 16th April, 1829. On the day appointed for the sale of a deputy sheriff of Oneida, by virtue of the *plaint* set forth in the declaration, took the horses from the *stable* of Roberts, and secured them in a *shed* adjoining the stable, and went into the house of Roberts, where he found *Green* the constable, and *Mitchell* the agent of the plaintiff in the execution, and *summoned* them to appear at the return of the plaint. The deputy was then told that the horses had been levied upon by virtue of the execution against *Eliphalet Simmons*, and both Green and Mitchell demanded that the right to the property should be tried. The deputy answered that if the claim of property had been made before he had delivered the horses to Simmons, he would have had the claim tried. The parties then proceeded to the *shed* to which the horses had been removed, and after a struggle between *Green* and *George Simmons*, as to who should have the possession of the horses, and a direction by the deputy to Simmons to use force, if necessary, Simmons went off with the horses. ·Before any evidence was given on the part of the defendant, and after the plaintiff had rested, the defendant moved for a *nonsuit*, on the grounds, 1. That in the first count of the declaration it was stated that the horses were in the *possession* of *Green*, whereas, from the proof, it appeared they were in the possession of *Roberts* ; 2. That in the second count a *joint possession* in Green and Mitchell, and a *joint claim* by them was alleged, which allegations were not supported by the proof ;

NEW-YORK,
May, 1832.

Mitchell
v.
Hinman.

3. That the third count, alleging a possession and claim in Mitchell, was not supported; 4. That neither Green nor Mitchell had claimed to be the *owners* of the property; the only claim they made being under the execution against Eliphalet Simmons; and 5. That the claim being by *parol*, was invalid. The judge overruled these objections, and refused to nonsuit the plaintiff. After the evidence was closed, the defendant insisted that no claim having been made until after the removal of the horses from the stable to the shed, the action would not lie. The judge instructed the jury that such removal, previous to the claim of property, did not destroy the plaintiff's right of action, and that if the claim was made immediately after the defendants in the replevin were summoned, it was in season, and submitted the questions of fact to the consideration of the jury, who found a verdict for the plaintiff. During the progress of the trial, whilst a witness for the plaintiff was on the stand, the counsel for the defendant proposed to inquire of him, "how he testified upon the matters in question upon a former trial of this cause." The judge decided that the inquiry was improper, and refused to permit it to be gone into, ruling that the witness could not be called upon to state what he had testified to upon a former trial, as his answers might lay the foundation of a prosecution for perjury. The defendant moved for a new trial.

*S. Beardsley*, for the defendant.

*A. Bennett & J. A. Spencer*, for the plaintiff.

*By the Court,.* NELSON, J. The first objection taken to the verdict is, that the possession of the property was in *Roberts*, and not in Green the constable. The cause of *Dillinbeck* v. *Jerome*, 7 Cowen, 294, is a conclusive answer to this objection, where it was holden that a receiptor is the mere agent or servant of the officer. But if the fact were conceded, that the possession was in Roberts, the objection is untenable. The first count in the declaration not only alleges that Green was in possession of the property, but that he was *one of the defendants* in the plaint. The language of the act is, that if at

any time hereafter, on a writ or plaint of replevin, the *defend-ant in replevin*, or *possessor*, shall claim property, &c. 1 R. L. 93, § 6. By the very terms of the statute, Green, as defendant, might interpose his claim of property against the execution of the plaint, until an inquiry was had into the right to the property. This view of the case also answers the objection that the evidence does not sustain the second and third count in the declaration, the second alleging possession in Green and Mitchell, and third in Mitchell; for although no joint possession is shewn in Green and Mitchell, nor separate possession in Mitchell, yet each count avers that they were the defendants in the plaint, and that fact is undeniable. This was enough to give effect to the claim of property by either of them, and to put the officer in fault.

It is said that neither Green nor Mitchell claimed to be *owners* of the property, but that the claim of both was under the execution. The benefits contemplated by this statute would be essentially abridged and its purpose defeated, if by construction we confine the right to set up this claim of property against the execution of the replevin to the absolute *owner*. This would leave, subject to the abuses specified in the recital to this section, every qualified interest in personal property. Such interest is entitled to the same protection as an absolute interest. It cannot be doubted, if, upon the inquiry before the sheriff's jury, the defendants in the replevin had been able to shew that the horses were the property of Eliphalet Simmons, the defendant in the execution, the sheriff could not have made deliverance of them, or dispossessed the officer. The effect, then, of the claim of this qualified interest would have been the same as if made by the absolute owner, which affords a strong argument in favor of its allowance. It is at least clear, that any claim of property which would legally prevent the execution of the replevin, if made, is within the meaning of the statute and should be acknowledged by the sheriff.

The statute does not make the sheriff the judge of the nature or extent of the interest in the property claimed. If "the defendant in the replevin or possessor claim property in the thing whereof deliverance is sought," whether they have any property or not in it is immaterial, the sheriff is bound to

NEW-YORK,
May, 1832.

Mitchell
v.
Hinman.

desist from dispossessing such persons, or from making deliverance to the plaintiff, until the right to do the same is investigated and decided by the jury, under the writ *de proprietate probanda.*

It would be a virtual repeal of the statute to allow the objection that the claim of property was too late, inasmuch as the sheriff had taken the horses upon the plaint, and delivered them to the plaintiff therein before such claim was made. This very case illustrates the truth of the observation. The property was taken and delivered to the plaintiff before the defendants had any knowledge that such process was in existence. Upon such a construction of the act, it would be in the power of the officer, in nearly every case, to elude the claim of property. The case of *Lisher* v. *Pierson,* 2 Wendell, 345, decides, that after a claim of property made, the sheriff cannot dispossess the defendant; and if he does, he is liable to an action of trespass, and this appears to have been the settled construction of the statute. To give effect to this construction, the defendant must have an opportunity to make the claim before dispossession or deliverance take place, and to insure such opportunity, we are bound to say, that if the claim is set up at the time of the summons of the defendant to appear, according to the first section of the act, it is in time. The sheriff should not deliver the property to the plaintiff in the plaint or writ until after the summons is served upon the defendant; and if claim is made, he should desist from dispossessing him. This is carrying out the construction given to the act in *Lisher* v. *Pierson,* and is fully warranted by its terms and purposes. Indeed, without this construction the salutary provision of the 6th section would be nugatory.

The defendant's counsel upon the trial offered to inquire of Green, one of the plaintiffs' witnesses, how he testified upon the matters in question on a former trial of this cause. The judge refused to allow the inquiry, on the ground that the answer, to it might lay the foundation for a prosecution for perjury. It does not appear from the case whether the witness objected to the inquiry or not; if he did, the judge was right in his decision, and I am inclined to think the defendant, to avail himself of the objection, ought to have shewn affirmatively

that the witness did not object to answering the question. Be that as it may, all the material facts testified to by this witness were proved by nine others on the trial, and one of them a witness of the defendant. The facts were fairly submitted to the jury, and they have found in favor of the plaintiff. The only material fact in dispute was as to the demand upon the deputy sheriff for a trial of the right of property, and the testimony of all the witnesses for the defendant, except that of the deputy, is of a negative character, and does not therefore seriously contradict the positive evidence of nine witnesses on the part of the plaintiff, who heard the demand made.

New tral denied.