## SUPREME COURT.

IN THE MATTER OF THE APPLICATION FOR AN ATTACHMENT AGAINST LEWIS TAPPAN AND BENJAMIN DOUGLASS.

Where interrogatories in a commission from another state, addressed to two witnesses residing in the city of New-York, for the purpose of proving that the defendant in the action, as a member of the Mercantile agency, of which the witnesses were also members, had, in 1847 or 1848, made a certain communication to the agency, which they had exhibited, respecting the character and standing of the plaintiffs, for which they had brought their action for libel,—*held*, that the witnesses were not bound to answer, they having declined, on the ground that their answer might form a link in the chain of evidence which might tend to convict them of libel.

They were not bound to answer upon any supposed protection from the statute of limitations, as it did not appear but that the exhibition of the paper might have been within one year.

*New-York Special Term, June,* 1854.   Application for an attachment for not answering interrogatories to a commission issued out of the court of common pleas of Huron county, Ohio, wherein Beardsley, &c., are plaintiffs, and Kinnan is defendant.

Lewis Tappan was in the Mercantile Agency in this city until 1849, when he sold out to Arthur Tappan and Benjamin Douglass.

The interrogatories seem to be based on the supposition tha the defendant, in 1847 or 1848, was an agent of the Mercantile Agency, and then communicated to the agency in writing a statement of the character of the plaintiffs, which was libellous. The answers show (or it is understood) that it is the business

of such an agency to record these communications, and to exhibit them to merchants inquiring as to the standing of the persons mentioned in them.

———— *for attachment.*
———— *opposed.*

MITCHELL, Justice. The communications and the records of them may have been exhibited and so published (as the law terms it) every year since they were furnished; they may have been so exhibited by Lewis Tappan, although he has withdrawn from the business, and by Arthur Tappan and Douglass, who now have succeeded him, although they were not in the business when the communication was received. It is now asked of Tappan & Douglass if Kinnan made such a communication in 1847 or 1848; and they decline to answer, because the answer may form a link in the chain of evidence which may tend to convict them of libel. As the exhibition of the paper may have been within a year, the statute of limitations would be no bar to a prosecution for libel, and so the respondents are not bound to answer on account of any supposed protection to be derived from that statute. The witness alone knows the facts beyond those to be contained in the answer, which may tend to his conviction; the court is not to compel him to tell what those facts are. If, therefore, he says that the answer may tend to convict him, and on that account refuses to answer, and the court can imagine any state of facts under which the answer might lead to such a result, the witness may insist on the protection of the law and refuse to answer. If these witnesses should answer yes, such a communication was received from Kinnan at that time, and then state its contents, and other witnesses prove that within the last year Lewis and Arthur Tappan and B. Douglass exhibited the letter from Kinnan as evidence of the plaintiff's character, the proof of these respondents' guilt might be made out, when, without their answer, there might be no evidence of the contents of the letter.

Examinations of witnesses under commissions from other states may be much abused, unless ample protection be given

to the witnesses by our courts; and when the witnesses may be subjected to a civil suit in consequence of their answer, and (as in case of a libel which may be published in different states) may be subject to indictments in different states, and then not protected by any statute of limitations on account of non-residence in those states, our courts should use a jealous care to protect them. The honest ought not to be forced to be their own accusers, nor the dishonest to be tempted to perjury in order to save themselves.

In the *People agt. Mather* (4 *Wend.* 254) the rule as to the kind of questions which the witness may decline answering is clearly stated; and notwithstanding the broad language used in the statute, the chancellor decided in a similar case (1 *Paige*, 607, *in the matter of Kip*) that "the witness is not obliged to criminate himself, or answer any question which he would not be bound to answer if examined in open court; that the legislature never intended to establish an inquisition by which witnesses should be compelled to criminate themselves, or to disclose secrets in which the parties to the examination had no interest."

The other interrogatories are as objectionable as the one above specially referred to. The motion for an attachment is denied.