copartnership petition according to form No. 2. The petition refers to schedules annexed to it as being schedules of the debts and assets of the copartnership, and of the debts and assets of Philip Lewis individually. Philip Lewis asks, on filing this petition, for an order that he have leave to join in the proceedings so heretofore taken by Henry Lewis, and his petition states that he is desirous of uniting in the petition of Henry Lewis, and of being made a party to the proceedings thereunder. So far as this petition of Philip Lewis expresses his assent to have the firm declared bankrupt, and his desire to join in the petition of Henry Lewis, Philip Lewis may properly be regarded as joining in the petition of Henry Lewis to have the firm declared bankrupt, so as to effect a compliance with general order No. 18, and thus validate the adjudication of bankruptcy in respect to the firm. But it is not in any other respect necessary for Philip Lewis to join in the proceedings taken by Henry Lewis, or to be made a party to them. The proceedings in respect to the creditors of the firm, and the creditors of Henry Lewis individually, will take place under the petition of Henry Lewis. The proceedings in regard to the creditors of Philip Lewis individually will take place under his petition. Philip Lewis will be adjudged a bankrupt, and receive a discharge under his own petition. Henry Lewis will receive a discharge under his own petition. So far as the petition of Philip Lewis is a petition for an adjudication of the bankruptcy of the firm, it may be disregarded, except as indicating the assent of Philip Lewis to join in the petition of Henry Lewis for an adjudication of the bankruptcy of the firm. Under such circumstances, general order No. 16 will not apply to the case, as there will be but one petition for an adjudication of the bankruptcy of the firm. The petition of Philip Lewis will be referred to the same register who has charge of the case of Henry Lewis.

[NOTE. The case was subsequently heard upon certificate of the register of the refusal by a witness upon examination before him to answer certain questions as tending to degrade the witness. Case No. 8,312.]

## Case No. 8,312.

### In re LEWIS.

[4 Ben. 67;[1] 3 N. B. R. 621 (Quarto, 153); 39 How. Pr. 155.]

District Court, S. D. New York. Feb. 24, 1870.

EXAMINATION OF WITNESS — QUESTIONS TENDING TO DEGRADE.

A witness under examination in a bankruptcy proceeding is not bound to answer, on cross-examination, a question not relating to any matter of fact in issue, or to any matter contained in his direct examination, if he says that the answer to it would tend to degrade him.

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

[In the matter of Henry Lewis, a bankrupt. The case has been previously heard by the court upon a decision of the register declaring the firm of P. & H. Lewis bankrupt upon the petition of Henry Lewis, one of the members of the firm. This decision was reversed as to the firm. Case No. 8,311.]

In this case a witness was called by one of the creditors of the bankrupt, to show destruction of books by the bankrupts. On cross-examination he was asked, if he had ever been employed by any firm in Manchester, England, and answered that he had. He was then asked: "By whom, and what was the nature of your employment?" He refused to answer, stating that the answer would tend to degrade him. The register held, that the witness was not bound to answer the question, and, on request, certified the question to the court.

By JOHN FITCH, Register:

[2] [This cause is now pending before me. A witness is under examination on the part of the creditors of the bankrupt's estate, for the purpose of showing that the petitioner has either destroyed, altered, mutilated, or falsified, or caused to be destroyed, altered, mutilated, or falsified, some of their books of accounts, book, document or writing relating thereunto, contrary to the provisions of section 44 of the act [of 1867 (14 Stat. 539)]. The direct examination has been closed, and the witness is on his cross-examination. Counsel for petitioner asks the following questions: Extract from minutes: "Q. Have you at any time been employed by any person or firm in Manchester, England? A. I have, but not in the capacity of book-keeper. Q. By whom? what was the nature of your employment? and how long did you remain in it? (Objected to as irrelevant and immaterial—the witness can only be examined as to the times during which he was a book-keeper, he being called as an expert. Overruled—excepted.) A. I cannot answer that question without making admissions which would be more or less humiliating to me. Q. Question repeated. A. I decline to answer the question, and ask the register's protection. (Counsel for bankrupt insists upon the question being answered, and asks that the register direct the witness to answer the question.) The Register—I decide that as the question stands the witness must answer the question, unless he say, under oath, that he cannot truthfully answer it without stating facts or circumstances which would bring upon him some moral turpitude or the commission of some offense prohibited by law. Witness—I say the answer to that question would tend to degrade me." The register decides that degradation is moral turpitude, and comes within the rule as laid down by the courts, and the witness is not obliged to answer the question, and will certify the question to the district court. Counsel for

[2] [From 3 N. B. R. 621 (Quarto, 153).]

bankrupt requests the register to certify the question to the court.

[The witness declines answering the questions, and claims the personal privilege of declining to answer the questions on the ground that a truthful answer to said questions would tend to degrade him, etc., and applies to the court for protection. The court as in duty bound, informed him of his legal rights. Vice Ch. Ct. 1833; Taylor v. Wood, 2 Edw. ch. 94. The witness again pleaded his privilege, and the court decided as above stated. It will be observed that the witness is a foreigner, and whatever offenses he may have committed in England, he cannot be punished for them here; but his admissions, or confessions of the commission of any crime or misdemeanor, or of any act which exposes him to any penalty or forfeiture in any country, or if by answering these questions the answer would tend to such a result, he is excused from answering the questions. Ct. App. 1847; Henry v. Bank of Salina, 1 N. Y. (1 Comst.) 83, affirming 2 Denio, 155; 24 Wend. 360.

[The right of a witness to answer is a personal privilege; his right to exercise it rests in his own discretion; he uses it at his peril. N. Y. Super. Ct. Sp. Term, 1824. Heerdt v. Wetmore, 2 Rob. [N. Y.] 697; Southard v. Rexford, 6 Cow. 255; People v. Bodine (1845) 1 Denio, 281; People v. Lonman (alias Mdme. Restell), 2 Barb. 216. The courts of this state have for years held that a witness was not compelled to answer any question, the truthful answer to which would have a tendency to implicate the witness in a criminal charge, or expose him to a penalty. 24 Wend. 360. The court is to determine whether the answers he may give could directly or indirectly criminate him by furnishing evidence of his guilt by his own admissions; even if it only established one fact out of many, which, taken together, would be sufficient to warrant his conviction, his privilege should be allowed. If the court holds that the answer might in any way criminate the witness, the witness is not to be compelled to explain how he would be criminated by such answer. In re Tappan, 9 How. Pr. 394; Ct. Err. 1845. Curtis v. Knox, 2 Denio, 341; Ct. App. 1848. And also where answers to a question would have disgraced the witness, the privilege may be pleaded, and must be allowed by the court. 4 Wend. 250; Cow. & H. Notes, note 521; 1 Burr's Tr. 244; 1 Greenl. § 454. Ct. App. 1843, Lohman v. People, 1 N. Y. (1 Comst.) 383, affirming 2 Barb. 216.

[In People v. Lohman (alias Mdme. Restell), 2 Barb. 216, (Marie Bodine Case) the court held that where a party intends to coerce an answer from a witness tending to degrade him, such party is bound to show affirmatively that the question is relevant. In the case of People v. Mather, 4 Wend. 229, the court says: If the witness was obliged to show how the testimony would affect him, the protection would at once be annihilated. In this case, it would be observed, the witness is not asked any question in regard to which he has testified in his direct examination, or anything applicable to this case, and in no way relating to the correctness, accuracy, or the way or manner in which the petitioner's books of account were kept. The answers, if given, will not be in any way inconsistent with his testimony already given on this trial, and cannot implicate him in perjury. Mitchell v. Hinman, 8 Wend. 667; People v. Bodine, 1 Denio, 281, and the authorities cited in these two cases respectively.

[Courts should exercise great care in compelling witnesses to answer questions where the witness claims the privilege, as is claimed by this witness, and has brought himself within the rule, as it is a matter exclusively between the court and the witness. The opposite party cannot object. He has no right to insist upon the privilege and require the court to exclude it on that ground, as the witness has the right to waive his privilege, and, if ordered to testify, he may refuse and be committed. 3 Hill, 564; Thomas v. Newton, 1 Moody & M. 48, note b; Treat v. Browning, 4 Conn. 408; Southard v. Rexford, 6 Cow. 259; Cow. & H. Notes to Phil. Ev. 784b; Forbes v. Willard, 54 Barb. 520.

[In the case of Mordaunt v. Mordaunt [26 Law T. (N. S.) 812], in England, a suit for a divorce on the part of the husband, the Prince of Wales was examined as a witness on the part of the defendant. The court, Lord Penzance, in advance of any question being asked the prince, of his own accord stated (witness did not plead his privilege), "That no witness was bound to make to any question an answer which would admit that he had been guilty of adultery." It will be observed that the court did not confine the answer to any question as to adultery with the defendant, but held that "no witness was bound to answer any question that would admit he had been guilty of adultery." This was in conformity to the provisions of an act of parliament recently enacted, in relation to the privileges of witnesses.

[Judges should exercise a sound discretion, and be governed, in a great measure, by the circumstances of the case. If it is apparent from the questions asked that the witness may have committed some indiscretion, or been guilty of some act of moral turpitude in times gone by, which act, if proven, cannot in any manner become relevant to the questions at issue, I hold it to be the duty of the court to shield a witness from proclaiming his own infamy, derelictions of duty, or of any act involving moral turpitude, tending to degrade or disgrace him in the esteem of his fellow-men. That whenever it is apparent that a witness shows signs of a reformation, or any desire to lead a correct or virtuous life, that the judiciary should take the first step to encourage such laudable

endeavors on the part of any person, and especially should not, unless the law definitely requires it, allow its records to contain the evidence of its witnesses' moral degradation —particularly so in this country, where the waves of moral depravity and pollution are so rapidly ingulfing our young men. It may well be asked, if the judiciary cannot or will not stem the tide or breast these waves —who can or will?

[The courts enforce the attendance of witnesses by compulsory process; disobedience to such mandate of the court is a crime punishable by the court, whose mandate has been disobeyed, by fine, imprisonment, or both.

[The judgment of the court committing a party for contempt becomes, by operation of law, a conviction. The president alone, by article 2, § 2, subd. 1, of the constitution of the United States, can pardon or reprieve the person convicted of the contempt, when the proceedings were in the United States courts. In re Adams [Case No. 39], and the cases there cited. And by the Revised Statutes of this state, whenever a party has been guilty of a contempt, and if actual injury has been sustained by such misconduct, a fine shall be imposed sufficient to indemnify the party injured thereby.

[Witnesses do not volunteer their testimony. They are to testify to the truth. They are supposed to be disinterested persons, unless parties to the action. They are entitled to the protection of the court both in person and in character. It cannot further the ends of justice to destroy the character of a witness, especially when no question of veracity is raised. Neither should witnesses be placed in fear of having their character impugned or defamed, in cases where no question at issue before the court could warrant such a proceeding.

[The witness is being examined as an expert. He has given testimony in his direct examination in relation to the books of the petitioner, the manner in which they were kept, of inaccuracies, erasures, interlineations, and defects therein, etc., as is above stated. The questions asked in his cross-examination, to which he pleads his privilege, do not in any manner affect his testimony in relation to the books. They speak for themselves. He has only testified to their present condition, as he finds them, and has given his opinion as an expert in bookkeeping, as an accountant, etc.; also his conclusions founded upon facts derived from such examinations.

[After a careful examination of the rules of law applicable to this case of the national and state courts, and of various authorities both in this country and in Europe, I am of the opinion: 1st. That the greatest latitude should be allowed on a cross-examination, and such latitude rests in the sound discretion of the court; and that the witness must answer all questions pertinent to the issues being tried, unless such questions come within the rule of privileged questions, of which the witness may avail himself. 2d. That these questions do come within said rule, that the witness has properly pleaded his privilege under oath, has brought himself within the rule, and should not be compelled to answer them, as he swears that the truthful answer thereunto would tend to degrade him, etc. 3d. That the answer to the questions, though they should tend to the utter ruin of the moral character of the witness, and showed the commission of offenses involving acts of the greatest moral turpitude, could not in any manner benefit the petitioner, as the testimony of the witness relates only to the present condition of the books of the commissioner, and his opinion based upon their present condition, as by section 44 of the bankrupt act, the court has to pass upon all the facts as they appear from said books. 4th. That the questions are privileged, and I hold that the witness need not answer the questions.] [3]

BLATCHFORD, District Judge. As the question did not relate to any matter of fact in issue, or to any matter contained in his direct testimony, and as a truthful answer to it would tend to degrade him, he was not bound to answer it.

---

## Case No. 8,313.

### In re LEWIS.

[2 Hughes, 320; 8 N. B. R. 546; 21 Pittsb. Leg. J. 77.] [1]

District Court, W. D. Virginia. 1873.[2]

BANKRUPTCY—PARTNERSHIP—PARTNERSHIP CREDITORS—INDIVIDUAL ASSETS AND CREDITORS —EQUITABLE RULE.

Section 36 of the bankrupt act [of 1867 (14 Stat. 534)] only applies to distribution of partnership and individual assets remaining after the satisfaction of liens thereon. And a creditor of a partnership having a lien on both the partnership and individual assets of the members may resort to either fund for payment, at his option, unless there are creditors having liens only on the individual fund, when the equitable rule as to two funds will apply, and the partnership creditor must first exhaust the partnership fund.

[Cited in Re Sandusky, Case No. 12,308.]

The land owned by the bankrupt individually, and deeded to him individually, having been sold by the assignee, the proceeds of that land are now claimed under a judgment first in order, obtained by Lanier & Co. against Lewis & Adams (in which partnership the bankrupt was a member) on a partnership debt; also by an individual credit-

---

[3] [From 3 N. B. R. 621 (Quarto, 153).]

[1] [Reported by Hon. Robert W. Hughes, District Judge, and here reprinted by permission. 21 Pittsb. Leg. J. 77, contains only a partial report.]

[2] [Affirmed by the circuit court; case unreported.]