ROXCELLENA HOMAN, Respondent, *v.* ALEXANDER EARLE, Appellant.

No particular form of words is necessary to constitute a contract of marriage, as in cases of other contracts, it is sufficient if such language is used as to show that the minds of the parties meet; and while, where in an action for the breach of such a contract the parties are witnesses and state all that occurred, a contract cannot be implied, yet the meaning and intention of the parties may be inferred, and it is sufficient to establish the contract if their acts and language were such as to clearly

indicate that they intended a mutual engagement and understood it to exist.

So, also, where the acts and declarations of the defendant were such as to induce the plaintiff to believe that there was an engagement and the latter acted upon that belief, and the former, knowing this, still continues them, he cannot deny that the engagement existed, and the obligation which he professed to incur can be enforced.

(Argued May 15, 1873; decided September 23, 1873.)

APPEAL from judgment of the General Term of the City Court of Brooklyn, affirming a judgment in favor of plaintiff entered upon a verdict; also affirming an order denying a motion for a new trial.

This action was brought to recover damages for a breach of an alleged promise of marriage.

The facts sufficiently appear in the opinion.

*William H. Scott* for the appellant. It was error to deny the motion at the close of plaintiff's case to dismiss the complaint, as plaintiff had failed to make out an engagement of marriage between herself and defendant. ( *Weaver* v. *Bachert,* 2 Barr., 80; *Honeyman* v. *Campbell,* 5 Wils. & Shaw, 144, 145; S. C., 2 Dow & Clark, 282; 31, 32 Vict., 68, § 2; *Broughton* v. *Smart,* Sup. Ct., Ill., June, 1872; *Garrie* v. *Lindsay,* 6 Irish L. T., 348; *Morrison* v. *N. Y. and N. H. R. R. Co.,* 32 Barb., 568, 575.) The refusal to nonsuit at the close of defendant's case was also erroneous. (*Mason* v. *Lord,* 40 N. Y., 477, 484; *Putnam* v. *Hubbell,* 42 id., 106; *Austin* v. *Stbt. Co.,* 43 id., 75, 79; *Beck* v. *Sheldon,* 48 id., 365; *Wilds* v. *H. R. R. R. Co.,* 24 id., 430; *Loomis* v. *Meeker,* 25 id., 362; *Ernst* v. *H. R. R. R. Co.,* How. Pr., 97.) It appeared affirmatively from plaintiff's evidence that she had released defendant from any promise to marry her. Defendant could avail himself of this defence, although not set up in his answer. ( *U. S. Cent. Ins. Co.* v. *Nat. Ins. Co.,* 14 N. Y., 86, 89, 90; *Ely* v. *Cook,* 9 Abb. Pr., 367, 378; *Stanley* v. *Robinson,* 2 Mylne & Cr., 527; *Jackson* v. *Demont,* 9 J. R., 56, 57.) There was no dis-

pute as to the facts of the case, and plaintiff's right of recovery was a question of law. (*Pratt* v. *Hall*, 13 J. R., 334; *Brook* v. *Wood*, 13 Price, 667; *Clarke* v. *Dutcher*, 9 Cow., 674; *Bryden* v. *Bryden*, 11 J. R., 187; *Foot* v. *Wiswall*, 14 id., 203; *Man. Co.* v. *Lydig*, 4 id., 377; *Cumpston* v. *McNair*, 1 Wend., 457; *Bank Utica* v. *Bender*, 21 id., 644; *Remer* v. *Downer*, 23 id., 620; *Dunscomb* v. *Buff. and S. L. R. R. Co.*, 27 Barb., 221; *Roth* v. *Buff. R. R. Co.*, 34 N. Y., 548; 11 J. R., 187; 3 Comst., 272; 3 Seld., 266; 27 Barb., 221; 2 Duer, 259; 1 Wend., 567; *Hedges* v. *H. R. R. R. Co.*, 49 N. Y., 223; *Jackson* v. *Mather*, 7 Cow., 301; 9 J. R., 342; *Jennings* v. *Carter*, 2 Wend., 450; *Gage* v. *Parker*, 25 Barb., 141; *Irwin* v. *Voorhies*, 26 id., 127; *Rex* v. *Upton-on-Severn*, 6 Car. & P., 133; *Bell* v. *Wardell*, 2 Willes, 204; *Williams* v. *Smith*, 2 Barn. & Ald., 496; *Schubel* v. *Fairbairn*, 1 Bos. & Pul., 938; *Rex* v. *Everett*, 8 Barn. & Cress., 114; *Tindall* v. *Brown*, 1 J. R., 167; *Burt* v. *Horner*, 5 Barb., 601; *Carroll* v. *Upton*, 3 Comst., 272; *City of Buffalo* v. *Holloway*, 7 N. Y., 493; *Wakeman* v. *Goudy*, 10 Bosw., 208.)

*Geo. G. Reynolds* for the respondent. It was proper to infer from the evidence an express promise. (*Wightman* v. *Coates*, 15 Mass., 1; *Perkins* v. *Hersey*, 1 R. I., 493; *Waters* v. *Bristol*, 26 Conn., 398; *Hotchkiss* v. *Hodge*, 38 Barb., 117; *Wells* v. *Padgett*, 8 id., 323; *Hubbard* v. *Bonesteel*, 16 id., 360, 361; *Hickey* v. *Campion*, 20 W. K. R., 752; *Button* v. *McCauley*, 5 Abb. [N. S.], 29; 5 Wel. & Sher., 145; 30 N. Y., 285.) The question as to defendant's pecuniary circumstances was properly allowed. (*Kniffen* v. *McConnell*, 30 N.Y., 285.)

CHURCH, Ch. J. There are three classes of errors insisted upon by the defendant's counsel: 1. Errors in receiving and rejecting evidence; 2. Errors in the charge of the court; and 3. Errors in not granting the motion to dismiss the complaint, made at the close of the plaintiff's evidence, and also at the close of the whole case.

The plaintiff testified that at the first visit of the defendant, after his wife's death, he took out a memorandum book and stated some requests of his wife which he had noted down, and said "that there was something he could not tell us now, that we would probably know some day, that passed between them four days previous to her death; he said it was not known to any living person but himself; we would probably know what it was some day." The defendant, when on the stand, was asked what it was that he intended to tell plaintiff, which was objected to, and the objection sustained and an exception taken. The defendant also offered to testify that his wife never mentioned the name of the plaintiff in connection with marriage, which was rejected. There was no error in rejecting this evidence. The only relevancy of the circumstance testified to by the plaintiff was, in connection with other circumstances, to show that the defendant intended to convey the idea to the plaintiff that his wife had requested or consented to his marrying her, which would tend to explain and characterize his subsequent acts and declarations. It was not material whether such request or consent was in fact made or given, but only whether the defendant gave the plaintiff so to understand, and this could only be shown by what he said and did, and not by the fact itself. The conversation of the defendant with Dr. Duryea had not been called out by the plaintiff so as to entitle the defendant to it. The other exceptions to evidence are clearly untenable.

There are several exceptions to the charge and to refusals to charge, but they relate mainly to a single point. It is claimed as a vital error that the judge charged that such a contract need not be expressed, but might be implied from the facts and circumstances. If this proposition had been stated in this brief form, without explanation, it might, perhaps, have been open to criticism. In some cases the law implies a contract from certain acts of a party; as if A. orders a quantity of merchandise, the law implies a promise to pay for them. In actions for breach of promise of marriage,

before parties were allowed to be witnesses for themselves, the contract was often inferred or implied from proof of such circumstances as usually attend an engagement. Frequent visits, receiving the defendant by the family as a suitor, presents, preparations for the wedding and the like; these being the usual accompaniments of an engagement, jurors were allowed to infer from them that a contract had been made. This rule permitted an implication from what was proved, of a contract not proved. Many of the cases cited on both sides refer to this rule. When the parties themselves are upon the stand and state all that was said and done, there is no room for inference that something else was said or done, but the question is whether the facts proved are sufficient to constitute a contract. In determining this question, however, while we may not imply the contract, strictly speaking, we may infer the meaning and intention of the parties. The charge of the learned judge upon this point clearly shows that he used the word express, and implied with reference to the mode of proof, and not to the contract itself. He said: " But in this particular case there must be a contract, there must have been an engagement to marry, and there must be evidence to justify you in finding that such an engagement existed, and existed as a matter of fact; that it was mutual." Again, "An express contract is one declared in words or in writing." Again, " Now you will perceive, gentlemen, that I intend to instruct you that in an engagement to marry the contract can be entered into between lovers without his asking in words the question whether she will marry him, and without her answering in words that she will do so." He also instructed them to take all the acts and declarations of the parties and determine whether the defendant intended to propose himself, and intended that she should so understand it, and that she accepted it. Again, the defendant's counsel requested the court to charge that the evidence of acts of the defendant can only be considered that such a promise was expressly made. The case states that " the court refused so to charge by reason of the word

'expressly' being contained in the request, that word 'expressly' being understood to mean the formal utterance of certain words; if that word be not limited to such meaning, the court accepted the proposition involved in the request as correct; there must have been a contract or promise sufficiently disclosed or expressed to fix the fact that they were to marry as clearly as if put in the formal words." The charge could not have been misunderstood; the substance of it was that a mutual contract to marry was requisite to sustain the action, but that no particular form of words was necessary to constitute it. It was sufficient if the acts and language were such as the parties understood and intended as an engagement to marry. This is the correct rule of law as to all contracts. There are no set expressions required. If such language is used as to show that the minds of the parties meet, it is in law an agreement. The language used in making contracts depends upon the subject-matter, the custom of transacting the particular business and other circumstances. If real estate or personal property is to be purchased, we should expect directness and more or less particularity, while in Wall street millions of property are transferred daily by a few words quite unintelligible to those not conversant with the business. The sale of a "put" or a "call" is as expressive and as well understood as if written out in detail.

Contracts of marriage are unlike all others. They concern the highest interests of human life, and enlist the tenderest sympathies of the human heart, and the acts and declarations done and employed by parties in negotiating them are often correspondingly delicate and emotional. As matter of law the learned judge was clearly right in holding that no formal language is necessary to constitute the contract of marriage. If the conduct and declarations of the parties clearly indicate that they regard themselves as engaged, it is not material by what means they have arrived at that state. The authorities both in this country and in England establish this doctrine. (*Hutton* v. *Mansell*, 6 Mod., 172; *Hickey* v. *Campion*, 20 Weekly R., 752; 6 Cow., 254; 8 Barb., 323; 38 Barb., 117;

21 N. H., 586 ; 30 N. Y., 285 ; 5 Wils. & Shaw, 144 ; 2 Dow. & Clark, 282.)

It will be observed that we are not now considering what facts are sufficient to justify the inference of a marriage contract, but only the question of law, whether formal, express terms are required, or whether the inference may be drawn from all the circumstances. The learned judge did not instruct the jury as to what particular facts would justify the finding of a contract, but left the whole case to them, with instructions that to sustain the action a contract must be found, and that express formal words were not necessary. This as matter of law was not error, if the judge was justified in submitting the case to the jury at all, which will be hereafter considered.

I agree with the learned counsel for the defendant that to constitute a promise of marriage substantial proof should be required of the fact. In the case of *Honeyman* v. *Campbell* (5 Wils. & Shaw, 144 ; 2 Dow. & Clark, 282), cited and very much relied upon by the defendant's counsel, the lord chancellor has, I think, correctly stated the law upon the subject. The propositions of the opinion are : 1. That the contract may be proved by direct or by circumstantial evidence. 2. That there must be a serious promise, intended as such by the person making it, and accepted by the person to whom it was made. 3. That mere courtship or even an intention to marry is not sufficient to constitute a contract of marriage. These propositions are entirely sound and do not conflict with the law of the court in this case. The opinion does not attempt to define what circumstances will be deemed sufficient nor from what acts or language a serious promise may be inferred. True, it holds, and I think correctly, that neither courtship nor a mere intention is alone sufficient, but the chancellor says : " But courtship is a most material fact in the case when you are examining whether from the conduct of the parties it appears that a promise had actually passed between them." So, while it is plain that an intention to make a contract is not a contract, yet if such intention is so expressed as that both

parties understand it to be a promise, and it is accepted as such, it is as binding as if made in any other form.  Parties may select their own language, and if from that and their conduct a legitimate inference may be drawn of their intention and understanding, such intention must be carried out. The expressions in some of the cases, that a contract may be inferred from devoted attention and apparently exclusive attachment, have not been generally adopted by the courts. (15 Mass., 1, note.)

The comments of the judge upon the testimony of witnesses who professed to state the declarations of the plaintiff were not the subject of a legal exception.  These observations related to the difficulty of repeating the precise words of a conversation, and suggested caution in adopting such words, and whether just or not, they violated no rule of law.

The motion for a nonsuit was based upon the ground that no contract of marriage had been proved, and if it had, it was released and discharged by the letter of the 29th November, 1870.   If there was no evidence to prove a contract, or if the evidence was of a character that a verdict for the plaintiff should have been set aside as against evidence, it was error to submit it to the jury, but if any construction of the evidence would justify a verdict, it was proper to submit the case to the jury.   In that case the verdict is not final, but may be reviewed by the Special and General Terms of the court below, but this court has no such power.   We can only determine questions of law.   In considering this point, we are restricted to the question whether there is any evidence which would warrant a finding for the plaintiff.   If there is such evidence, although had we power to pass upon the fact we should find otherwise, we cannot disturb the verdict.   The General Term is the final tribunal upon questions of fact tried by a jury.

The question, therefore, is whether, taking the most favorable view of the evidence for the plaintiff, as the jury may have done, there is sufficient to justify them in finding a contract of marriage, or rather whether their so finding is an error of

law; if only an error of fact, we cannot review it. So much depends upon construction of language and acts, upon inferences from the character and position of the parties, and other circumstances which are peculiarly within the province of a jury, that it is difficult to make the question any other than one of fact. The parties are highly respectable, belonging to the same church of which the defendant is an elder. Except in pecuniary resources they seem to have been equals. The plaintiff was about thirty and the defendant fifty. He had lost his wife, to whom he was affectionately devoted. The plaintiff was the intimate personal friend of his wife during her life, and the two families were upon friendly if not intimate terms. Soon after the death of his wife, the defendant commenced visiting the family of the plaintiff. There was no significance in this circumstance other than what we might expect from a desire for sympathy and consolation for the great affliction which the defendant had suffered; but the evidence shows that these visits became more and more frequent, during which the defendant evinced marked and significant personal attentions to and apparent affection for the plaintiff; and these attentions were of a character which, it is claimed, could proceed from no honorable motive except an intention to marry. It is not claimed by the plaintiff that the engagement was made in express words. She stated that he never asked her in so many words to be his wife, but thought she had a right to expect that he meant it. It is claimed that during their intercourse, his language and acts assured her of his desire to marry her; that she evinced a willingness, and that both regarded themselves as engaged. There are many facts and circumstances from which it is claimed that the jury were justified in drawing this inference. The force and weight to be given to these circumstances are matters of fact and not of law, and a few of them only will be referred to for the purpose of establishing this proposition. There were rides and walks and frequent visits, extending sometimes until late in the evening; there was language of endearment and such

caressing as might be expected between lovers, accompanied with expressions by the defendant indicative, to say the least, of a desire that the plaintiff would become his wife. He told her that he intended to marry again at the end of a year after his wife's death; that he and his wife had talked it over before her death, and that his wife had said something which he could not tell her then, but which she would some day know. He described to her the kind of a wife he intended to marry, and significantly said that he knew of such a one, the plaintiff answering the description. He told her that he expected she would some day know all his business and various other expressions of a similar significance. After this had continued about two months, upon an occasion when the defendant expected to leave home for a few days, the subject of their relations was alluded to, when the plaintiff told him that he had said many things which she thought meant a great deal, but he need not feel under any obligation from what he had said, and that he was free and had his liberty. He only answered at the moment that he regretted that she had misunderstood him, without explaining in what respect she had misunderstood him; but he drew his chair nearer, put his arm around her, and told her that he thought a great deal of her; he remained until quite late, and said he did not want to go home. Upon his return from his journey he immediately called at her house, and finding her absent, engaged in her avocation of dress-making, he went where she was at work and was very cordial, kissing her upon meeting and parting, told her he had been very lonely, etc. He was intending to be absent a few days again, and requested the plaintiff to write to him. She declined, saying he would know his mind better in the fall. Upon his return he made a visit, continuing late in the evening. At this visit, according to the plaintiff's evidence, he made a formal declaration of love. "He said he loved me, and I was all the world to him; he asked me if I loved him; * * * if I could return it. I said I could and did." The defendant does not seem to remember much of this interview. What inference is to

be drawn from these facts? The plaintiff had notified him how she regarded his advances, but frankly released him from any implied obligation; had declined to write to him, intimating that he should make up his mind definitely. Yet with this notice and warning and request he continues his suit with renewed vigor and perseverance, ending in a mutual pledge of love and endearing caresses. What the parties intended by these acts and declarations, what is the correct translation of them, is for a jury and not a court; it is a question of fact and not of law. They are capable of a construction tending to corroborate the plaintiff's evidence, that while he did not say in words that he would marry her, she had a right to expect he meant it. If he did not mean that, what did he mean? It was for the jury to say. The parties were then separated for six weeks, one or both being absent from the city. Immediately upon their return in September, the defendant commenced and continued his visits as before, three or four times a week, sometimes twice a day, both in the daytime and evening, often staying quite late. These visits were apparently of the same cordial and affectionate character, and at one of them the defendant informed the plaintiff that he intended to marry when the year was up; that he supposed it would make a great talk, but he should not care, and asked plaintiff if she should care, and what she thought about it. The jury may have thought this was strongly confirmatory of the plaintiff's right to expect marriage, and that the defendant intended she should so regard it. On the 20th of October the defendant requested a note from the plaintiff as to the character of his visits. Upon being asked his reasons for it, he told her it was as much for her good as his; that he didn't want her folks to know (or think) there was an understanding between them so soon. He drafted the note and she copied it, retaining the draft. It was in substance that she regarded his visits as evidence of his friendship "and nothing more." There is a discrepancy between the evidence of the plaintiff and defendant as to the circumstances under which this note was given, but

the jury may have believed the version of the plaintiff, and if so that the language of the defendant amounted to an admission that there was an understanding or engagement between them. The fact is that sometime prior to this the defendant had become acquainted with the lady whom he afterward married, and was probably engaged to her at that time, and the jury doubtless believed that his object in procuring the letter was not for the reason assigned, but to relieve himself from an obligation which he felt that he had incurred, and that the transaction viewed in this light was not quite in accordance with the code of morals which an elder of the church should practice. It probably had a very damaging effect with the jury, and we have no power to say that they should believe one witness instead of another. The letter written by the defendant soon after to the plaintiff may also have been viewed in the light of a confession. He said, "I feel that I have done you a great wrong; it is me that is to blame, not you." At the subsequent interview, upon being charged by the plaintiff with the engagement to another lady, the defendant admitted it, and when she recalled what he had said and done, and asked what he meant by them, without denying any of them or that she was justified in regarding them as serious, he replied "little witchery." The relations of the parties ended and the defendant was married the subsequent spring.

After a careful examination of all the evidence and the very able and elaborate briefs and arguments of the respective counsel, and the opinions of the judges at the General Term, we think that the evidence is fairly capable of a construction to warrant the verdict for the plaintiff. Acts and even declarations which between some persons and under some circumstances might be unimportant would be significant and decisive between other persons and under other circumstances. A mutual pledge of love might be of insignificant import, or it might be indicative of an engagement depending upon a variety of surrounding circumstances evincing the intent of the parties. So of caresses. They

may indicate trivial flirtation or the sealing of the delicate contract of marriage. The defendant was marriageable and openly avowed his intention to marry at a certain time, and although he did not in words ask the plaintiff, he said and did everything else indicating such a purpose, and received her assent, and was warned by her that his continuance would be so regarded by her, and after all that he declared to her that she was all the world to him, and after a six weeks' absence renewed his suit with the same apparent ardor as before. The defendant testified that he did not intend to marry the plaintiff. This may be so; yet if his acts and language were such as to induce her to believe that there was an engagement, and she acted upon that belief, and he knew that she so regarded them, and so acted and still continued, he cannot deny that the engagement existed. (39 Conn., 1.) She has a right to enforce the obligation which he professed to incur.

In *Perkins* v. *Hersey* (1 R. I., 493), the rule was laid down that if " his conduct was such as to induce her to believe that he intended to marry her and she acted upon that belief, the defendant permitting her to go on trusting that he would carry that intention into effect, that will raise a promise upon which she may recover."

The learned counsel for the defendant urged, upon the argument, the force of what he called the "negative evidence," such as the want of presents or a ring, or any married plans or arrangements, or letters and the like. These were considerations entitled to force before the jury, but they are not conclusive that no engagement existed. The jury may have believed that the defendant felt a delicacy either from a promise to his first wife or from a sense of propriety in not making the engagement more explicitly or publicly than he did, and that he preferred for the time being not to have it known beyond himself and the plaintiff. He evinced some sensitiveness about its being known that he remained so late; and, as the plaintiff states, he gave as a reason for the letter of October 20th, that he didn't want the folks to think there

was an understanding so soon. These and other reasons may have prevented these circumstances from having the weight to which the counsel thinks them entitled.

There is no ground for claiming that the letter of the plaintiff, of the twenty-ninth of November, operated as a release or discharge of the action. The defendant had informed her that he was about marrying another woman, and she wrote him a very womanly and appropriate letter, rebuking him for his conduct and stating that his visits were not as agreeable as formerly, and that she had no expectation of seeing him again. If there was an engagement of marriage, he had then broken it by engaging himself to another lady. At all events their relations were necessarily disturbed by his act, and the plaintiff only expressed her appreciation of it. If it was a dismissal, it was not of a suitor, as he had ceased to be such by his voluntary change of position. It did not affect her right of action nor relate to it.

The question whether the damages are excessive, is not reviewable in this court. As no legal error was committed, the judgment must be affirmed, with costs.

All concur.

Judgment affirmed.