NELLIE E. YALE, Respondent, _v._ WILLIAM R. CURTISS, Appellant.

_Breach of promise of marriage — no formal language is necessary to constitute the contract — admission of incompetent evidence cured by subsequently striking it out — evidence admissible in such an action — exceptions to a charge not available upon appeal._

No formal language is necessary to constitute a contract to marry, nor in an action brought to recover damages for a breach of promise of marriage is it necessary to prove in so many words that the defendant promised to marry the plaintiff.

In such an action it appeared upon the part of the plaintiff that in December, 1885, the defendant sought and obtained an introduction to the plaintiff, and at the next interview he told her that he had long been wishing to make her acquaintance. For a period of two years and upwards thereafter, he frequently went home with her from church or prayer meetings and occasionally took her to public entertainments. In March or April, 1888, he went home with her nearly every Sunday from church and nearly every Thursday evening from prayer meeting. Often on these occasions he stopped at her home and visited with her until ten or eleven o'clock and sometimes later. She usually entertained him alone in the parlor. In June or July, 1887, there was a conversation about a trip to Europe, from which the plaintiff might have inferred that the defendant was contemplating a trip to Europe with the plaintiff as his wife. Upon one or more occasions he spoke of building a house and asked what building lot she preferred. In May, 1888, the plaintiff told him that she had heard the remark that all he went with her for was to please himself and see how big a fool he could make of her. The defendant earnestly denied making such a remark, and, among other things, said he had admired her from the very first; that he had never met a young lady that he regarded more highly, and said several times he longed to make her happy; he also said that he would always protect her. She told him the most she wanted to know was if he was true, and he replied that he had said all he could find language to express that he was true, and just before he left he said, "If I live I will make you happy." Prior to that time he had several times told plaintiff that he did not believe in long engagements. During the time defendant was paying attention to plaintiff, she did not receive attentions or visits from other young men.

Upon the part of the defendant much of this evidence was denied, and other circumstances shown, from which it was argued that there was no promise to marry in substance or intent, and that the plaintiff did not suppose or have any right to suppose that an engagement was made or offered.

Upon the trial the jury brought in a verdict for the plaintiff.

_Held,_ that the case was properly submitted to the jury and its conclusion should not be disturbed.

When a court inadvertently commits an error in receiving evidence, but before the witness leaves the stand recalls the ruling and strikes out the objectionable evi-

dence, there should not, in any ordinary case, be any presumption of injury by reason of the erroneous ruling.

In such a case, it is not error for the mother of the plaintiff to testify that she knew her daughter was making preparations for getting married, nor is evidence as to the plaintiff's condition of health after and in consequence of the breach of the promise of marriage improper.

On the trial the plaintiff was asked what her business was, and how she gained her livelihood, which question was objected to as incompetent and improper; the objection was overruled, and an exception taken, and the answer was, by giving music lessons.

*Held*, that it was proper to ask the witness what was her occupation and business ; and that if the balance of the question was improper, the objection, to be available upon appeal, should have so specified.

Where, at the conclusion of a trial, the court is requested to charge nine propositions, but declines to charge the same, other than as it has before charged, an exception to the refusal of the court to charge as requested, is not sufficiently definite to be available upon appeal.

APPEAL by the defendant, William R. Curtiss, from a judgment of the Supreme Court in favor of the plaintiff of the 30th day of April, 1890, entered in the office of the clerk of the county of Chenango, upon a verdict for $3,000, rendered at the Chenango Circuit, and from an order made at the Chenango Special Term, denying the defendant's motion for a new trial, made upon a case and exceptions, and entered in said clerk's office of Chenango county on the 26th day of January, 1893, as of the 5th day of September, 1892.

*Edward B. Thomas* and *Howard D. Newton*, for the appellant.

*George W. Ray*, for the respondent.

MERWIN, J.

This action is brought to recover damages for a breach of promise of marriage, alleged to have been made by the defendant to the plaintiff on or about the 15th of May, 1888. Whether there was such a promise was the main issue at the trial. The finding upon that issue in favor of the plaintiff is challenged by the defendant upon the ground that the evidence was not sufficient to authorize it.

There is no evidence that the defendant in so many words promised to marry the plaintiff. That, however, was not necessary. No formal language is necessary to constitute the contract to marry.

If the conduct and declarations of the parties clearly indicate that they regard themselves as engaged, it is not material by what means they have arrived at that state. (*Homan* v. *Earle*, 53 N. Y. 267, 272.) The meaning and intention of the parties may be inferred from their acts and declarations. (Id. 271.)

Upon the part of the plaintiff, it appears that in December, 1885, the defendant sought and obtained an introduction to the plaintiff, and at the first interview soon thereafter told her he had long been wishing to make her acquaintance. Thereafter for a period of two years and upwards he frequently went home with her from church or prayer meeting, and occasionally took her to public entertainments. In March or April, 1888, he went home with her nearly every Sunday from church, and nearly every Thursday evening from prayer meeting. Often on these occasions he stopped at her home and visited with her until ten or eleven o'clock in the evening and sometimes later. The plaintiff usually entertained him alone in the parlor. Upon one of these occasions, in June or July, 1887, there was a conversation about a trip to Europe, from which the plaintiff might have inferred, whether properly or not would be for the jury to say, that the defendant was contemplating a trip to Europe with the plaintiff as his wife. Upon one or more other occasions he spoke of building a house, and asked her what building lot she preferred. At an interview about the middle of May, 1888, the plaintiff told him she had overheard the remark that all he went with her for was to please himself, and see how big a fool he could make of her, and she asked him if that was true. The defendant earnestly denied it, and among other things said he had admired her from the very first; that he had never met a young lady that he regarded more highly, and several times said he longed to make her happy. He also said he would always protect her. She told him the most she wanted to know was if he was true, and he replied he had said all he could find language to express that he was true, and just before he left he said, "If I live I will make you happy." Prior to this time he had several times told her that he didn't believe in long engagements. During the time the defendant was paying these attentions to the plaintiff she did not receive attentions or visits from other young men.

Upon the part of the defendant, much of this evidence was denied,

and other circumstances were shown from which it is argued by the counsel for the defendant that there was no promise to marry in substance or intent, and that plaintiff did not suppose or have any right to suppose that an engagement was made or offered.

We are of the opinion that a case was presented such as was proper to be sent to the jury for determination, and that their conclusion on the subject should not be disturbed. It was for them to say whether or not there was in substance a promise to marry. This depended upon inferences which it was the province of the jury to draw. It was for them to say whether the statements were made as claimed by plaintiff in May, 1888, and if so, then, in the light of the previous conduct and declarations of the parties, it was for them to say what was the meaning and intention of the parties. That, as held in the *Homan* case, was to be inferred from their acts and declarations. In that case, of a matter somewhat similar it is said : " What the parties intended by these acts and declarations, what is the correct translation of them, is for a jury and not a court ; it is a question of fact and not of law. They are capable of a construction tending to corroborate the plaintiff's evidence, that while he did not say in words that he would marry her, she had a right to expect he meant it. If he did not mean that, what did he mean ? It was for the jury to say." In *Button* v. *McCauley* (1 Abb. Dec. 282), it is said that a statement by defendant to plaintiff that he would make a good home for her tended to prove the alleged contract of marriage.

Our attention is called to several exceptions to rulings upon the admission or rejection of evidence. We, however, do not find in them any sufficient cause for reversal. The evidence of the conversation as to the trip to Europe was proper. It related to the subject in controversy and its bearing and effect were to be considered along with the other evidence in the case. The same may be said as to the conversation about going to New York. After the plaintiff had narrated the conversation as to the trip to Europe she was asked the question : " Now, you may state how you understood that at the time." This was objected to by the counsel for defendant as incompetent and improper, and as a conclusion and opinion, and the objection was overruled and exception taken. The witness partially answered, when, on motion of defendant's counsel, the answer so far

as made was stricken out. The following then occurred : "·The court. What did you understand he meant by that? Answer. I thought he meant that he wished me to accompany him when he went abroad. Q. As what? A. As his wife. Defendant's counsel. I move to strike that out as improper and incompetent, and as a conclusion and opinion. The court. The motion is denied." Exception was taken. Shortly afterwards, before the direct examination of the witness was closed, she was asked a similar question as to what she understood by the saying of the defendant, " I will always protect you." This being objected to, the court said : " I think upon consideration that the proper rule is not to allow a party to testify how she understood it ; but allow the fact to be put in, and the jury to say what would be the fair meaning of the phrase. I will strike out the evidence which was given before as to how she understood the expression that she was asked about which she testified to ; I will exclude this." The defendant objected and excepted to the striking out of the evidence as he might lose the benefit of his previous exception. The error, if any, in receiving and refusing in the first instance to strike out the previous evidence was, we think, cured, within the rule laid down in *Gall* v. *Gall* (114 N. Y. 109), and approved in *Holmes* v. *Moffat* (120 id. 162). The court not only struck out the evidence, but in substance said to the jury it was for them and not for the witness to say what was the meaning of the phrase. If a court inadvertently, in the hurry or confusion of a trial at Circuit, makes an error in receiving evidence, but before the witness leaves the stand recalls the ruling and strikes out the objectionable evidence, there should not, in any ordinary case at least, be any presumption of injury by reason of the erroneous ruling. It should rather be presumed that the jury disregarded the objectionable evidence, as they are presumed to disregard a great many other assertions in the course of a trial that are not evidence.

It was not error to receive the evidence of the mother of plaintiff, that she knew of her daughter making preparations for getting married. ( *Wilcox* v. *Green*, 23 Barb. 639.) The plaintiff had already testified to the same thing without objection. It was at least competent on the question of damages. And so was the evidence of the condition in health of the plaintiff after the breach

and in consequence thereof. The information which led the plaintiff to ask explanation of the defendant in May, 1888, was derived by plaintiff from her mother. It was not material from whom the mother received the information. Nor was the talk between her and her father or her counsel before the commencement of the suit. The plaintiff, at the commencement of her evidence, was asked the question, "What is your business now, and how do you gain your livelihood?" This was . objected to as incompetent and improper, and objection overruled and exception. The answer was, "By giving music lessons." It was proper to ask the witness what was her occupation or business. If the balance of the question called for improper evidence as to her property, that objection should have been specified, and not being so, is not available. (*Simson* v. *Chadwick*, 20 Wkly. Dig. 35 ; *Hochreiter* v. *People*, 2 Abb. Dec. 363.) In *Vanderpool* v. *Richardson* (52 Mich. 339), it was held proper for the plaintiff to show she had no property.

The defendant's counsel also claims errors in the court refusing to charge certain requests. The record shows that, at the close of the charge, the defendant's counsel requested the court to charge nine propositions, which are set out. At the end of these the following appears: "The court. I decline to charge the requests made by the defendant's counsel other than I have charged. Defendant's counsel excepted to the refusal of the court to charge as requested." This exception is not sufficiently definite to be available within the ruling in many cases. (*Smedis* v. *Brooklyn*, etc., 88 N. Y. 14 ; *Magee* v. *Badger*, 34 id. 247.) Many of the requests were in substance charged ; others referred to detached portions of the evidence, and asked for a charge upon the effect of those alone. The court, in its charge, laid down the law of the case fully as favorably to the defendant as he was entitled to have it. In the refusals to charge we find no error prejudicial to the defendant.

The foregoing considerations lead to an affirmance of the judgment.

HARDIN, P. J., concurred.

Judgment affirmed, with costs.