**OLGUIN v. APODACA.** (No. 179m–3209.)

(Commission of Appeals of Texas, Section B. March 9, 1921.)

1. **Appeal and error** ⊛═⊃759—Assignments should be copied in brief as required by rule.

Though the statute provides that an assignment shall be sufficient which directs attention to the error complained of, the rule of the Supreme Court, providing that assignments shall be copied into the brief, should always be complied with.

2. **Breach of marriage promise** ⊛═⊃23—Evidence held to show promise conditional on sexual intercourse.

In an action for breach of promise of marriage, evidence *held* not to support the allegation that, following the promise of marriage, defendant began to solicit and have sexual intercourse with plaintiff, but to show that the promise was conditional on plaintiff sleeping with defendant.

3. **Breach of marriage promise** ⊛═⊃7—Will not support action when promise made in consideration of sexual intercourse.

A promise by a man to a woman, to whom he had not previously shown any attentions or manifested any affection, that he would marry her if she would sleep with him, was based on an immoral and illegal consideration and condition, and its breach could not be made the basis of a recovery of damages.

4. **Contracts** ⊛═⊃112—Void when prejudicial to public morals.

An agreement prejudicial to public morals, whether involving a violation of the criminal law or not, is void and of no force.

5. **Trial** ⊛═⊃337—Verdict contrary to law and facts when uncontradicted evidence showed facts hypothesized by disregarded charge.

Where the court charged that, if defendant proposed to marry plaintiff if she would have sexual intercourse with him, the verdict

should be for defendant, and the uncontradicted evidence showed there was no consideration for the promise, other than sexual intercourse, a verdict for plaintiff was contrary to both the law and the facts.

Error to Court of Civil Appeals of Eighth Supreme Judicial District.

Action by Benancia Apodaca against Andreas Olguin. A judgment for plaintiff was affirmed by the Court of Civil Appeals (202 S. W. 367), and defendant brings error. Reversed and rendered.

C. L. Vowell, of El Paso, for plaintiff in error.

Volney M. Brown and Claude Lawrence, both of El Paso, for defendant in error.

KITTRELL, J. We are met at the threshold of this case by the question whether the assignments of error should have been considered by the Court of Civil Appeals.

That court refused to consider the assignments, and held that no fundamental error appeared in the record, and affirmed the judgment of the lower court. Therefore we have not the assistance of the opinion of the Court of Civil Appeals on the merits of the case.

[1] It is manifest that counsel for appellant believed that the judgment of the trial court was fundamentally erroneous, and for that reason did not prepare his brief with that regard for the requirement of the rules which should under all circumstances be observed. Indeed, he in effect so states. Both the statute and the rules are plain and simple, and while the language of the statute is, "an assignment shall be sufficient which directs the attention of the court to the error complained of," yet the rule of the Supreme Court provides that assignments shall be copied into the brief, and that should always be done. Consideration of the convenience of the appellate courts, respect for the rules prescribed by the Supreme Court, and orderly presentation of the errors complained of, all demand that the rule be complied with.

While a number of the Courts of Civil Appeals have made most rigid and rigorous holdings upon the question under discussion, the Supreme Court, so far as we are advised, has never held that a failure or omission to copy verbatim an assignment into the brief shall deprive the appellant of the right to have his case considered on its merits, if the assignment was in fact sufficient to direct the attention of the court to the error complained of, and we apprehend will not so hold, since such holding would be to repeal the statute·by means of a rule.

It is no more, indeed, it is less, difficult to copy the assignments in full, than it is to attempt by a process of condensation, blending, and summarization to set forth their substance; and, besides, the latter method both infringes the rule and imperils the interests of the client, who may be penalized by reason of the sheer neglect and indolence of his counsel, as would be the result in the instant case, if the holding of the appellate court be sustained.

We agree with the Supreme Court that the case should be considered on its merits, and in view of the conclusion we have reached we pretermit all discussion of the question of appellate practice.

The case is one of breach of promise of marriage, and, of course, must be determined in accordance with the fundamental principles of law and practice applicable to the cases of that character.

[2] The plaintiff pleaded properly, and stated on paper, a case good in law. She alleged that early in July, 1916, the defendant began to pay court to her, and sought her hand in marriage, and that finally she consented, and it was mutually understood and agreed that they would be married at an early date, and they so contracted. That afterwards plaintiff began to solicit plaintiff to have carnal intercourse with him, and out of her love for and trust in him she consented, with the result that she was about to become the mother of a child of which defendant was the father. She further pleaded repudiation by defendant of the promise to marry, her willingness, her demand on him, and his refusal.

The defendant pleaded a general demurrer and general denial.

It is obvious from the pleadings of the plaintiff that the idea meant to be conveyed was that a promise to marry had been made following upon preliminary and preparatory efforts of defendant to overcome the maidenly shyness of the plaintiff and ingratiate himself in her affections.

That defendant had used the pardonable strategic policy of capturing the citadel of her affections by the method of gradual approaches, and that by the process of long association and delicate attention and tentative and tender wooing the flame of affection was kindled, and that such affection begat confidence, which confidence the defendant abused and betrayed, and having done so refused to carry out the contract of marriage.

That the evidence not only does not sustain such allegations and support the case pleaded, but shows that the promise to marry was based on an immoral and consequently illegal consideration, as is made evident by the testimony of the plaintiff, who was the only witness who testified in support of the allegations of her petition.

Her testimony fully and fairly set forth was: That she had known defendant a long time; that they lived not far apart; that she was 26 years old and blind, but had gone to school when 14 years old at the School for the Blind in Austin; that defendant was about 50 years old and a widower with children, and was possessed of considerable property; that, while there was no objection to

his coming to her home, he had "never come there to see her and never came there to spark her."

That the first time defendant ever mentioned love or marriage to her was on Sunday night, three days before the 4th of July, which came on Tuesday, and she testified that defendant said then that if she would sleep with him he would marry her in November; that she was sure he said that and could not be mistaken, and she said: "All right. I trust you. So we went to bed together." And it is clear that they "got together" both on Sunday night and on July 4th. She so expressly testified.

Her testimony was:

"He said, 'You want to live with me and get married to me.' I said, 'Yes, if you be true to me.' 'I be true to you.' He at the same time told me to come over there next Sunday and we would sleep together; that was part of the same conversation. He said if I would come over there and sleep with him he would marry me and be true to me."

She had defendant in error arrested upon the charge of seduction, and on preliminary hearing October 2, 1916, she testified:

"Andreas said, 'Let us go in the room and stay together all night,' and I said, 'All right,' and he said nothing, and I said, 'If you are going to be true to me, I trust you.' He said, 'Yes.' Then we got into bed together. I didn't take off my clothes. I stayed with him all night, and after that I saw him every Sunday. The 4th of July was the first time he ever talked about being true to me. The first time he ever told me that he loved me was on Sunday night before the 4th of July, and that was the time he talked about sleeping together and marrying, and that was the first time I ever loved him.

"He talked about getting married first, and of sleeping together afterwards, but of course it was all in the same conversation. I saw him at Jones' ranch close to my home. I understood what he meant when he first talked to me and said if I would let him sleep with me he would promise to marry me. I was at Dora Jones' house on Sunday before the 4th of July, and Andreas was there. Dora Jones was there when Andreas and I slept together. I guess she saw us go into the room together. The baby was born April 8, 1917. He talked about 'getting together' on the 4th of July on Sunday after he promised to marry me. He said: 'I promise to marry you. I want you to come the 4th of July and get together.' The first word he said was, 'I love you.' Then I said, 'I love you.' Then he said, 'Are you willing to marry me?' And I said, 'Yes, if you would be true to me.'"

[3] It is too obvious to admit of argument that according to this testimony the promise to marry was made upon condition that plaintiff would sleep with defendant first, and necessarily the reverse implication was that if she refused to perform that condition he would not marry her. Therefore the consideration and condition of the promise was immoral and illegal, and could not be made the basis of recovery of damages for breach of a promise.

It is laid down in Ruling Case Law, vol. 4, p. 145, that—

"It is clear that an immoral consideration will not support a promise of marriage, and consequently if a promise to marry is in consideration that the promisee shall before marriage, have sexual connection with the promisee, it is void."

[4] An agreement prejudicial to public morals, whether involving a violation of the criminal law or not, can have no force. A contract contra bonus mores, or which amounts to an immoral act, is void. Bishop on Contracts (2d Ed.) § 505.

An agreement in consideration of future illicit intercourse between parties is void. Chitty on Contracts, vol. 2, p. 979; Corpus Juris, vol. 9, p. 327; Button v. Hibbard, 82 Hun, 289, 31 N. Y. Supp. 483.

In the last-cited case there was continual association of the parties, and devoted attention and all the ordinary manifestations of affection, which the court held was sufficient consideration apart from the original promise to be seduced, but in the instant case there is absolute absence of any evidence of such facts.

There is no evidence that they were ever seen together in public, or that it was anywhere by any person understood that the relation of engaged parties existed between them.

So far as the evidence reveals, the first approach by defendant to plaintiff was in the form of the plain, blunt proposition that if she would permit him to sleep with her he would marry her in November, and to the proposition she assented and their illicit association then and there began and continued; and since she says she saw him after that every Sunday, such intercourse must have continued after it had borne inchoate fruit, since the child was born a few days in excess of nine months after he first suggested love or marriage to her.

She alleges that she demanded that he comply with his agreement, but he refused; but a most careful examination of the statement of facts reveals no evidence in support of such allegation.

She testified that defendant promised to marry her in November, and it appears that she had him arrested on the charge of seduction in October; but there is no testimony that he ever refused to marry her at the time promised.

[5] There is one other fact which makes reversal necessary. The jury was instructed that, if they found that defendant proposed to marry plaintiff on condition that she have sexual intercourse with him, they would find for the defendant.

Evidently the court used the term "proposed" in the sense of "promised," and the indisputable evidence is that such was the

consideration, and the only consideration. Therefore their verdict was directly contrary to both the facts and law.

The physical condition of the plaintiff in the form of visual infirmity evidently appealed effectively to the sympathy of the jury, as was reflected by the verdict for $7,-500; but we cannot ignore fundamental rules of law and established precedent in order to meet and relieve the hardship of an individual case. The case alleged is not only not proved, but is destroyed by plaintiff's own testimony; and fundamental error is apparent on the face of the record.

We recommend that the judgments of the district court and the Court of Civil Appeals be reversed, and judgment be rendered for plaintiff in error.

PHILLIPS, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.