UTICA,
Aug. 1826.

Southard
v.
Rexford.

---

### SOUTHARD *against* REXFORD.

A witness may be asked a question, the answer to which will criminate him ; and, if he has no objection, may answer it.

ASSUMPSIT, for breach of promise of marriage ; tried at the *Saratoga* circuit, *June,* 1825, before WALWORTH, C. Judge.

The plea was the general issue, with notice that the defendant would prove in his defence, that the plaintiff

His privilege is personal only : but it is the duty of the court to advertise him of it.

And where, in an action for breach of promise of marriage, the defendant asked his witness if he ever knew of any person having criminal connexion with the plaintiff; and the judge would not suffer the question to be put ; but himself told the witness he might, if he pleased, state any improper intercourse, if there had been any between the plaintiff and him ; *held,* that this was not a violation of the rule.

A jury may infer mutual promises of marriage from the defendant's visits to the plaintiff as a suitor, and his declarations that he had promised to marry the plaintiff.

After a defendant has once broken a promise of marriage, his offer to renew it, is no defence to an action for the breach.

In an action for breach of promise of marriage, if the defendant give notice, with his plea, that he will prove that the plaintiff has been guilty of fornication ; but fail entirely to show it on the trial, the jury may consider this in aggravation of damages.

The damages in this action are in the sound discretion of the jury, under the circumstances of each particular case.

had, at various times, and with various persons, specifying them, committed fornication after the alleged promise.

The defendant attempted, at the trial, to prove this branch of his defence by one *Stephen Aylesworth* and others; but failed.

When *Aylesworth* was upon the stand, the counsel for the defendant asked him if he ever knew of any person having criminal connexion with the plaintiff?

The judge told the witness he need not consider that question as including himself; that he was not bound to say any thing respecting himself. That if he said he did know of any person, the plaintiff's counsel must be permitted to inquire who it was, in order to test his credibility, or for the purpose of enabling him to call witnesses to disprove it.

The witness then answered the question in the negative.

The defendant's counsel then claimed the right of putting the question in such manner as to include the witness in the answer to be given; leaving it to him to make the objection to answering it, if he thought proper.

The judge decided that it was improper to put a question to a witness, when it clearly appeared he was not bound to answer it. That the right of the witness to be exempt from declaring his own infamy or guilt, was perfect; and must be preserved to its fullest extent. That it is the province of the court to decide, whether a direct answer to the question proposed, will furnish evidence against the witness. In such cases, the witness is not bound to answer the question either way, although the truth may not criminate him; and in all such cases it is the duty of the court to interfere, and prevent the question from being put to the witness; and not compel him to claim an exemption from answering, on the ground that it would criminate himself; because the very claim of exemption would cast a suspicion on him. Neither would the judge permit the counsel for the defendant to cast a suspicion upon the character of the plaintiff, by asking their own witness a question which he might refuse to answer, for the purpose of creating such a suspicion. That when the answer to a question cannot directly implicate

the character of the witness; but may do it collaterally; then the question may be put; and the witness must claim his exemption; and show how it may implicate him. And he must, in addition to that, on his oath, declare, that his answer will, in his opinion, have that tendency.

The judge, therefore, refused to allow the question to be put in the form proposed; but told the witness that he was at liberty to state any improper intercourse, if there was any such, between the plaintiff and him.

Other questions upon the trial were, whether a valid promise of marriage was proved; and whether, if proved, it had been rescinded; both of which the judge left to the jury upon the evidence. Another question was, whether an offer by the defendant to renew his promise of marriage, and a refusal by the plaintiff, was a defence; as to which the judge charged, that if the defendant had violated his agreement, and, in consequence, the connexion between the parties had been broken off, the offer and refusal were no defence.

As to the damages, he charged, "that in cases of this kind, the damages are always in the discretion of the jury; and in fixing the amount, they have a right to take into consideration the nature of the defence set up by the defendant. That in his defence, he had attempted to excuse his abandonment of the plaintiff, on the ground that she was unchaste, and had committed fornication with different individuals. But it appeared from the testimony of his own witnesses, that her character in that respect had not been tarnished even by the breath of suspicion. That with such a defence on the record, a verdict for nominal or trifling damages might be worse for her reputation than a general verdict for the defendant. That if the defendant had won her affections, and promised her marriage; and had not only deserted her without cause, but had also spread this defence upon the record, for the purpose of destroying her character; the jury would be justified in giving exemplary damages."

The judge also commented at length upon the testimony; and expressed to the jury a decided opinion in favor

of the plaintiff on all the questions of fact submitted to their decision.

The other facts are stated in the opinion of the court. Verdict for the plaintiff for $750.

*A. C. Paige,* for the defendant, moved for a new trial. He insisted there were no mutual promises of marriage proved : the promise of the defendant, therefore, was without consideration.   But if there was a binding promise, the plaintiff's second engagement of marriage with another, was a rescission of that with the defendant. (*Holt's N. P. Rep.* 151.   3 *Mass. Rep.* 189.)   Besides, the defendant was discharged from his contract by his offer to perform, and the plaintiff's refusal. (17 *John.* 175.  1 *Chit. Pl.* 318.)   Her refusal to receive the defendant's visits, and receiving those of others, were a breach of the contract on her part, and discharged the defendant.

The judge erred in overruling the question proposed to be put to the witness. (3 *Taunt.* 424.  1 *Phil. Ev.* 205-6, *and the cases there cited ; ed.* 1820.   3 *Campb.* 210, 519. 4 *Esp. Rep.* 226.)

The judge erred in charging that if the contract had been broken off without the plaintiff's fault, she was not bound afterwards to receive the defendant's addresses.

He also erred in charging that the damages were in the discretion of the jury ; and that the defence interposed should aggravate the damages.   (15 *Mass. Rep.* 48.   2 *Phil. Ev.* 103, 106, 107.   3 *John.* 62, 64-5.   9 *id.* 51.)

*S. G. Huntington,* contra, cited 3 *Campb.* 519 ; 4 *Esp. Rep.* 225, 242; 1 *Phil. Ev.* 206, *ed. of* 1820 ; 2 *Esp. Dig. Gould's ed.* 405, *per Marshall, Ch. J. in U. States v. Burr*; 2 *Com. on Contr.* 410.

*Curia, per* SUTHERLAND, J.   Whether there were mutual promises of marriage between the parties or not, was properly left by the judge to the jury, as a question of fact. The evidence abundantly supports the verdict upon this point.   The promise on the part of the defendant was clearly proved.   In *January,* 1819, he admitted to an *Eli-*

*za Peck*, that he had promised to marry the plaintiff, and intended to fulfil his engagement. About the same time, he told the brother of the plaintiff, that he intended soon to marry her. A number of witnesses testified, that from *June*, 1818 to 1823, the defendant visited the plaintiff as a suitor, and was apparently well received by her; and it was matter of public notoriety that he was courting her. The fact of an engagement of marriage between the parties; of a promise on the part of the plaintiff as well as of the defendant, is necessarily to be inferred from this evidence.

It was also correctly submitted to the jury, to determine as a question of fact upon the evidence, whether the engagement had been rescinded by mutual consent, or had been broken off by the plaintiff before any breach on the part of the defendant. It was contended that the contract was broken by a subsequent engagement of the defendant to one *Stephen Aylesworth*, in the spring of 1819. On this point, the evidence, on the part of the defendant, was of a very doubtful and suspicious character. The case states that *Stephen Aylesworth*, who swore to the engagement, upon cross-examination by the court, repeatedly contradicted his previous statements, and told several different stories, as to the time when the agreement to be married was made between him and the plaintiff. The testimony of *Abel Aylesworth* and *Samuel Peterson*, as to the confessions of the plaintiff, that she was engaged to be married to *Stephen Aylesworth*, were not free from just grounds of suspicion. The jury, without doubt, entirely disregarded the testimony of *Stephen Aylesworth*; and if they believed the other two witnesses, they probably supposed the declarations of the plaintiff were not made in earnest; as all the testimony shows that, at this very period, the defendant was constant in his attention to her, and was publicly considered as her suitor, and received by her in that character.

The offer made by the defendant, a short time previous to his marriage, to renew his attentions to the plaintiff, and her refusal to receive them, afford him no defence against

UTICA,
Aug. 1826.

Southard
v.
Rexford.

this action. The only evidence upon this point is derived from the confessions of the plaintiffs to *Olive* and *Peter Tarpenny.* She stated, that a short time before the defendant courted his present wife, he came to her, and wanted to be friendly again. *She told him he had deceived and disappointed her so often, that she could have no confidence in him.* That the defendant then told her he was determined to get married, and that unless she received his visits, he would go somewhere else. She then replied, that he might go for what she cared. The fair construction of this conversation is, that the defendant had previously violated his engagement; that the plaintiff considered him so faithless, that no reliance could be placed upon his promises, and she therefore refused to permit him to renew his visits. It is to be remarked, that the defendant does not, on this occasion, offer to marry the plaintiff, but only to renew his addresses. She chose to consider the connexion between them as at an end; and not subject herself to the pain and mortification of being again deceived. The defendant's offer is not to consummate the original contract, but to make a new one. Then she had a right to decline.

I think the judge erred in preventing the defendant from asking the witness, (*Stephen Aylesworth*) in general terms, if he ever knew of any person having criminal connexion with the plaintiff. The witness was not bound to answer the question, so far as the answer would criminate himself; and it was the duty of the court to apprise him of his right in that respect. But if a witness, under such circumstances, thinks proper to waive his privilege, I do not understand it to be either the duty, or the right of the court, to force it upon him, and to deprive the party of the benefit of such disclosures as he may voluntarily make. It is a personal privilege only. The fact that the witness had criminal intercourse with the plaintiff, the defendant had an undoubted right to establish. The witness was entirely disinterested, and as *competent* to testify to that fact as any other. No man shall be *compelled* to criminate himself; but if, from a sense of justice, or any other consid-

eration, he is willing to make disclosures which involve his own character, and may expose him to punishment, I know no reason either of law or policy which should prevent him.

If a question of this description cannot be put in general terms, how is a *particeps criminis* ever to testify against his associates ?

In *Phillips*, the rule is thus stated : " A witness cannot be *compelled* to answer any question which has a tendency to expose him to penalties, or to any kind of punishment ;" (1 *Phil. Ev.* 222 ;) and I have found no case, where the object of the question was to establish a fact material in the cause, and not directly to impeach the character of the witness and render him incompetent, in which the court have ever interfered, except upon the application of the witness. (3 *Campb.* 210, 519. 3 *Taunt.* 424. 13 *East*, 58, *note.* 4 *Day*, 123. *U. States* v. *Burr.* 2 *Esp. Dig.* 405, *per Marshall, C. J.* 13 *John.* 82, 229.) The language of the judges in all the cases is, that the witness *is not bound* to answer a question, the object of which is to criminate or render him infamous. In *Rex* v. *Lewis*, (4 *Esp. Rep.* 225,) the witness, on his cross-examination, was asked " if he had not been in the house of correction in *Sussex*." Lord *Ellenborough* interposed ; and said the question should not be asked. So in *M'Bride* v. *M'Bride*, (4 *Esp. Rep.* 243,) Lord *Alvanley* would not permit a witness to be asked, " whether she lived in a state of concubinage with the plaintiff." In both these cases, the questions were put on the cross-examination, and with the sole view of directly impeaching the witnesses. They cannot be supposed to have been willing to answer them ; and though it does not affirmatively appear that they objected, yet, from the very nature of the case, such undoubtedly was the fact. (*Peak. Ev.* 129, *et seq.*)

But although the judge refused to permit the defendant's counsel to put the question generally to the witness, so as to include himself as well as others, in which I think he erred ; still, he informed the witness that he was at liberty to state any improper intercourse, if there had been any.

between him and the plaintiff. The witness, therefore, was not prevented from making a full disclosure ; and though, perhaps, he would be less likely to do it under such circumstances, still I do not think it a sufficient cause for setting aside the verdict.

Upon the question of damages, the charge of the judge appears to mé to be unexceptionable. There can be no settled rule by which they are, in every case, to be regulated. They rest in the sound discretion of the jury, under the circumstances of each particular case ; and where the defendant attempts to justify his breach of promise of marriage, by stating upon the record as the cause of his desertion of the plaintiff, that she had repeatedly had criminal intercourse with various persons, and fails entirely in proving it, this is a circumstance which ought to aggravate the damages. A verdict for nominal or trifling damages, under such circumstances, would be fatal to the character of the plaintiff ; and it would be matter of regret indeed, if a check upon a license of this description did not exist, in the power of the jury to take it into consideration in aggravation of damages.

The damages do not appear to be excessive.

New trial denied.