NEW YORK COUNTY.—HON. D. G. ROLLINS, SURRO-
GATE.—June, 1885.

HOYT *v.* JACKSON.

*In the matter of the application for revocation of
probate of the will of* JESSE HOYT, *deceased.*

Under ordinary circumstances, where a witness, in obedience to the com-
mand of a subpœna *duces tecum*, attends in court, and produces papers
which contain matter relevant and material to the pending controversy,
the same are admissible in evidence, not only upon the offer of the
party at whose instance the subpœna was issued, but also upon that of
his adversary.

The provision of Code Civ. Pro., § 837, to the effect that the rule compel-
ling *parties* to answer relevant questions "does not require a witness
to give an answer which will tend to . . . . . expose himself to a
penalty or forfeiture," cannot be invoked to justify the contestant of a
will in refusing to furnish testimony which would establish the fact of
the validity of the disputed document.

Where a witness, in obedience to a subpœna *duces tecum*, attends in court
and, after being sworn, produces papers which he thereupon places in
the custody of the court, either party has thereafter the same right,
which he had when the witness was present, to insist that the papers
shall be placed at his disposal, for use as evidence in the cause.

The privilege established by Code Civ. Pro., § 835, which declares that
"an attorney or counsellor at law shall not be allowed to disclose a
communication made by his client to him . . . . . in the course of his
professional employment," is that of the client and not of the attor-
ney; and, where the former is a party to a litigation, this privilege
exists, notwithstanding the abrogation of the rule which rendered
*parties* incompetent as witnesses.

Mitchell's Case, 12 *Abb. Pr.*, 249—dissented from.

But where a party to a pending controversy subpœnaes his own attorney
to produce papers at the trial, which, upon their production, he omits
to offer in evidence, he is to be treated as thereby giving the right to
his adversary to introduce them, if discovered to be pertinent to the
issue.

APPLICATION by decedent's daughter, Mary J. Hoyt,
for the revocation of probate of decedent's will;

opposed by James W. Jackson and others, executors.
A previous phase of the controversy was reported in
2 *Dem.*, 443. During the progress of the case upon
the part of the contestant, a subpœna *duces tecum*
was issued at the request of the contestant, and was
served upon Mr. Conkling, former counsel for the
contestant, to produce certain papers therein de-
scribed. In obedience to the subpœna, Mr. Conkling
attended in court, and requested that he be sworn as a
witness, and, on being sworn, he produced to the Sur-
rogate the papers mentioned and described in the
subpœna, and, taking the court's direction, he de-
livered them to the Surrogate.

Before resting their case, the contestant's counsel
moved that the papers deposited with the court " by
Mr. Conkling be placed in the custody of counsel for
contestant." The court said : " For the present I
deny your motion." Thereupon Mr. Evarts, of coun-
sel for proponents, asked the court to put at their
disposition, for use as evidence in the cause, the
papers produced under the subpœna issued by the
other side.

Wm. M. Evarts, and Elihu Root, *for the motion.*

B. F. Butler, and Roger A. Pryor, *opposed.*

The Surrogate.—Assuming that the papers lately
produced by Mr. Conkling, at the instance of contest-
ant's attorney, but not offered in evidence by him,
are material and relevant to the issues of this pro-
ceeding, have the proponents, under the circumstances
here appearing, the present right to introduce them

in evidence in face of the contestant's protest? I have never had occasion to deal with so important a question of practice, upon which so little light has been thrown by decided cases. I have been unable, indeed, even with the assistance afforded me by counsel, and after thorough ransacking of the text books and reports, to find any judicial decisions which could clearly guide me to the solution of the comparatively simple question that would be here presented, if the witness who produced these papers, in obedience to the writ of subpœna *duces tecum*, had never been counsel for the contestant, and if, therefore, the question of a client's privilege were in no wise involved.

There are numerous cases, English and American, touching the right of one of the parties in a litigation to put in evidence papers and documents that he has brought into court, in pursuance of a notice for their production from his adversary. But those decisions are based upon a principle that is manifestly inapplicable to the present situation, and to any situation indeed where there has been a production of papers, not by one of the parties in a cause at the demand of the other, but by a third person at the instance of one of the parties.

A subpœna *duces tecum* is a process whereby a court, at the instance of a suitor, commands a person, who has, in his possession or control, some document or paper that is pertinent to the issues of the pending controversy, to produce it for use at the trial. Now, it seems to me that, under ordinary circumstances, when a witness has appeared in response to such a

subpœna, and has produced papers and documents by such subpœna directed to be produced, such papers and documents, if they contain relevant and material matter, are admissible in evidence upon the offer, not only of the party at whose instance the subpœna has been issued, but also upon the offer of his adversary. It was held by CRESWELL, J., in Snelgrove v. Stevens (1 *Car. & Mar.*, 508), that a witness being in court, and having a material document in his possession, was bound to produce it if required, though he had not received notice to produce it, and had not been served with a subpœna *duces tecum.*

Whether, as between the witness and the court, that doctrine should be approved or disapproved, it is plain that, under ordinary circumstances, its enforcement in the conduct of a trial would not be an error of which either of the contending parties could take advantage. If the witness himself should not protest against the disclosure, for the purposes of evidence, of documents that he had brought to the court room, not at the instance of the party offering them, but either at the instance of the opposite party, or without the summons of either, it is plain that such opposite party could make no objection. But how does the case stand, when the person subpœnaed is or has been counsel for one of the litigants?

Unless the doctrine of the common law, respecting privileged communications between an attorney and client, has been abrogated, in whole or in part, by the change in our system of jurisprudence, whereby parties have been made competent and compellable witnesses, it is very clear that Mr. Conkling, had he

brought these papers into court pursuant to a subpœna from the proponents, could not have been compelled, and indeed could not have been permitted, to disclose them without the contestant's consent (Jackson v. Burtis, 14 *Johns.*, 391; Jackson v. Denison, 4 *Wend.*, 558; McPherson v. Rathbone, 7 *id.*, 216; Coveney v. Tannahill, 1 *Hill*, 33; Kellogg v. Kellogg, 6 *Barb.*, 116; Mallory v. Benjamin, 9 *How. Pr.*, 419).

Now, the statement of that proposition suggests three subjects of inquiry:

*1st.* If these papers were now in the possession or under the control of the contestant herself, could she be required to produce them by a subpœna *duces tecum*, issued at the instance of the proponents?

If this question be answered in the affirmative, then

*2d.* Does the fact that she could be so required empower the court to enforce their production by her counsel, if the papers chance to be in his possession, and thus make ineffectual the client's claim of privilege? And if not, then

*3rd.* Has the contestant, by the fact that she has herself brought about the production of the papers, waived the right, that she might else have maintained, to protest against their disclosure to the proponents, and against the proponents' use of them for purposes of evidence?

The first question of the three it is not difficult to answer. With certain exceptions, that need not here be noticed, a party is now examinable as a witness for any purpose, in any manner and at any stage of the cause, and may, like any other witness, be required to produce books and papers (Bonesteel v. Lynde, 8

*How. Pr.*, 226; Commercial Bank v. Dunham, 13 *id.*, 541; Brett v. Bucknam, 32 *Barb.*, 655; People v. Dyckman, 24 *How. Pr.*, 222: Central Nat. Bank v. Arthur, 2 *Sweeny*, 194; Smith v. McDonald, 50 *How. Pr.*, 519; McGuffin v. Dinsmore, 4 *Abb.*, *N. C.*, 241).

It is claimed by contestant's counsel that their client is protected, from producing the papers sought to be put in evidence against her, by the doctrine of the law that is now embodied in § 837 of the Code. " This provision," says that section (that is the provision requiring parties to answer relevant questions), " does not require a witness to give an answer which will tend to accuse himself of a crime or misdemeanor, or to expose himself to a penalty or forfeiture." If the application that counsel for the contestant seeks to make of this section, and of the decision of Judge PECKHAM, in Anable v. Anable, is correct, then any person interested in the result of a probate controversy may refuse absolutely to give testimony in the cause. The contestant stands in no other attitude to the matter than either of the proponents. It is true, as counsel argues, that this estate, pending the controversy, is not *in nubibus*. It has vested in somebody, and when this controversy shall terminate, it will be ascertained in whom it has vested. At present it does not appear that the contestant has any estate other than that given her by the will, and if her testimony would establish the fact that the will is valid, then she could not lawfully refuse to furnish that testimony by reason of any protection afforded. her by § 837.

The second of the three questions I have suggested is more difficult of solution.

It was held by DALY, Ch. J., in Mitchell's Case (12 *Abb. Pr.*, 249), that the enactment of the law making a party compellable to testify as a witness operated as an abrogation of the doctrine, that had theretofore prevailed, respecting the inviolability of the confidence between attorney and client. This decision is put upon the ground that the exemption of the attorney from the necessity of testifying was never regarded as his personal privilege, but as existing purely for the protection of his client; that he was, in this respect, considered as one and the same person with his client. " When the Code," says the learned Judge, " declares that a party to an action may be compelled to testify in the same manner, and subject to the same rules of examination as other witnesses, it is obvious that the meaning is that whatever may be required of other witnesses may be required of him. If they must produce books and papers, so must he, and if he has placed them in the possession of his attorney, agent, or any other person, the one who has them in actual custody may be compelled to bring them before the court, to be used as evidence. In courts of equity the principle of protection was never extended to all papers belonging to a client which he may have put in the hands of his solicitor; but the general rule was that whatever the client was bound to produce, for the benefit of a third person, his solicitor, if the document or paper was in his possession, was also bound to produce."

In support of this proposition several cases are

cited by Judge DALY.   The list could be considerably enlarged (see Fenwick v. Reed, 1 *Mer.*, 114 ; Furlong v. Howard, 2 *Schoales & Lef.*, 115 ; Busk v. Lewis, 6 *Madd.*, 29 ; Vawter v. Ohio & Miss. R. R. Co., 14 *Ind.*, 174 ; Egrement v. Langdon, 12 *Ad. & Ell., N. S.*, 711).

The case of Courtail v. Thomas (9 *Barn. & Cr.*, 288) is much to the purpose.   By an order of court, in a suit pending between a lessor and a lessee, the lease was put in possession of the lessor's attorney. An action was subsequently brought by the lessee against the tenant in possession, and the lessor's attorney was served with a subpœna *duces tecum* to produce the lease that he had received in his professional capacity.   It was held by the trial court that he was not bound to produce it ; but Lord TENTERDEN said, on review of the proceedings : "It appears clearly that the lessor might have been subpœnaed at the trial, and compelled to produce the lease, because it is not part of his title ; and if he could be compelled to produce it, then the attorney (who stands in the situation in which plaintiff did) was bound to produce it.

This doctrine seems to be sanctioned by Cowen & Hill's notes to Phillipps on Evidence (5*th Am. ed.*). In note 62, it is declared that " the privilege of the attorney seems to be co-extensive with that of the client ; " and in note 578, the rule is stated thus : " Attorneys and solicitors who hold the papers of their clients cannot be compelled, under a subpœna *duces tecum*, to produce them in a controversy be-

tween third persons, except where their clients would be compelled."

The whole theory of the protection of a party against his attorney's voluntary or enforced production of documents confidentially entrusted to him seems to have been this—that a party ought not, in consequence of having put such document in his attorney's hands, to be placed in a more unfavorable situation than he would have occupied, if they had remained in his own possession.

Now, if the decision in Mitchell's Case is to be followed, the claim of these proponents must be sustained; for, if that decision be authoritative, Mr. Conkling, were he now upon the witness stand with these disputed papers in his hands, could be required to produce them at the call of the proponents (Snellgrove v. Stevens, *supra;* Field v. Zemansky, 3 *Bradf.*, 111, 479); and, manifestly, whatever right the proponents had to require their production when the witness was present has been in no respect affected by the fact that the papers have been lodged with the Surrogate, for such disposition as may seem to him just and lawful. In other words, if the proponents would have had a right, when the witness was present, to insist upon the use of any material and relevant documentary evidence that he had produced and put in the custody of the Surrogate, they have a right to insist that the Surrogate shall now place that evidence at their disposal. But I am convinced that, whatever might have been the law applicable to this subject between the passage of the act permitting parties to be witnesses and the enactment of the

present Code of Civil Procedure, the privilege under discussion now exists substantially as it did when the decisions were rendered upon which contestant's counsel rely.

"An attorney or counsellor at law," says the Code, "shall not be allowed to disclose a communication made by his client to him in the course of his professional employment." If, therefore, Mr. Conkling had brought these papers into court, in obedience to a subpoena issued upon the call of the proponents, I should not have directed their production, except with the contestant's consent.

There remains to be considered the question whether the contestant, by the acts of her present counsel, has waived her privilege to protest against the introduction of these papers in evidence. That this privilege may be waived, is, of course, not open to dispute (Southard v. Rexford, 6 *Cow.*, 254). Indeed, it is squarely asserted by § 836 of the Code. Now it is contended by the proponents that the privilege has in fact been waived in the case at bar. It was always the law that, if a party availed himself of the testimony of his own attorney, the opposite party became entitled to cross-examination (Vaillant v. Dodemead, 2 *Atk.*, 524). A party was never permitted, after opening the door of inquiry wide enough to get what he wanted from his attorney, to slam it in the face of a cross-examiner.

By a parity of reasoning, a party who has subpoenaed his own attorney to produce papers, may fairly enough be treated as having thereby given the right to his adversary, in case such papers should be

produced pursuant to the subpœna, and should be discovered to be pertinent to the issue of the controversy, to put the same in evidence. I am so strongly disposed to believe that this proposition is sound that, if a denial of the proponents' motion would put it utterly out of their power to command thereafter the production of these papers, I should feel bound to afford them at once the opportunity of putting the papers in evidence. But, under all the circumstances, I have concluded to take another course—the course that, on the day this matter was argued, I intimated that I might decide to adopt. I shall direct the return of the papers to the witness who produced them, thus placing all persons interested, as far as may be, in the situation that they occupied before this discussion arose, and leaving with the proponents and the contestant to take further action, accordingly as they may be advised.

I think it proper to add that nothing has yet occurred in the history of this matter, so far as it has revealed itself to the court, that calls for animadversions upon the conduct of any of the counsel now or heretofore concerned in these proceedings. The fact that one who is brought into court under a subpœna *duces tecum* has formerly been of counsel for one of the contending parties affords no excuse for refusing to comply with the direction of the writ, even when it has been procured by his former client's adversary.

The law is well stated by Chief Justice SHAW, in Bull v. Loveland (10 *Pick.*, 9). " There seems to be no difference in principle, between compelling a

witness to produce a document in his possession under a subpœna *duces tecum*, in a case where the party calling the witness has a right to the use of such document, and compelling him to give testimony when the facts lie in his own knowledge. A subpœna *duces tecum* is a writ of compulsory obligation which the court has power to issue, and which the witness is bound to obey, and which will be enforced by proper process to compel the production of the papers when the witness has no reasonable or lawful excuse for withholding it; and of such lawful or reasonable excuse the court and not the witness is to judge. When the witness has the paper ready to produce in obedience to the summons, it is a question of the discretion of the court, under the circumstances of the case, whether the witness ought to produce or is entitled to withhold the paper." It seems to me that, in the present case, the witness adopted a course which was at once consistent with his relations with his former client, and with his duty to the court, and which may, perhaps, have been essential for the proper protection of his own interests.

In the case of Foster v. Hall (12 *Pick.*, 89), an attorney at law, who had received from the grantee of property confidential communications on the subject of its transfer, submitted to the court whether he should be examined respecting the matter. In commenting upon this course, Chief Justice SHAW says: "Mr. Robinson very properly submitted it to the court upon the facts disclosed whether he should answer or not, having no wish to either volunteer or withhold his testimony."

The rule in such a case is that the privilege is the privilege of the client and not of the attorney, and therefore, whether the facts shall be disclosed or not must depend upon the just application of the rule of law, and not upon the will of the witness.

The stenographer will be directed to return to Mr. Conkling the papers produced by him and not as yet offered in evidence.