## CARRIE W. PEARCE, Respondent, *v.* WILLIAM A. STACE, Appellant.

Breach of promise — seduction — Statute of Limitations — evidence — erroneous admission of opinions of witnesses and self-serving declarations of plaintiff — damages — untrue and scandalous remarks by counsel reflecting upon plaintiff — erroneous charge as to allowance of damages for such statements.

1. In order to sustain an action for breach of promise of marriage and renewals thereof it must appear that an action upon the original promise was not barred by the Statute of Limitations, or that such promise was kept alive and the time of its fulfillment extended by mutual consent, so that the alleged breach was within the time within which such an action might be brought; and the plaintiff cannot recover for seduction under the alleged promise of marriage unless it appears that the original promise was either concurrent with or before the alleged seduction.

2. It was competent in such an action for plaintiff to show that attentions were paid to her by defendant, but it was reversible error for the court to permit witnesses to testify that plaintiff appeared to be attached to the defendant, and that they seemed to have great affection for each other. It was for the jury to determine the inference to be drawn from the acts and conversations of plaintiff and defendant as narrated by the witnesses, and the admission of opinions by others was erroneous.

3. It was also erroneous to admit evidence of the feelings and actions of third parties toward the plaintiff for keeping company so long with the defendant without becoming married, and the explanations and self-serving declarations of plaintiff made in relation thereto and in the absence of defendant were not admissible for any purpose.

4. It was error for the court to charge in such action that if the defendant had authorized or permitted without objection his counsel to make scandalous charges and·statements, either in his opening, or elsewhere in the case, which tended to reflect discredit upon the plaintiff or stain her reputation, and that if such charges were made and were scandalous and untrue and were designed to reflect discredit upon the plaintiff or stain her reputation, the jury might consider such circumstances on the question of damages if they found the plaintiff was entitled to recover anything. Such instruction was too

broad.   The fact that the charges against plaintiff's conduct might be untrue would not alone be ground for aggravating the damages; the charges must be made in bad faith.

5.  The charge was also erroneous because such a rule would prevent counsel for defendant, in such an action, from characterizing the evidence of the plaintiff and her credibility as a witness, lest increased damages should follow.   It would also require a defendant to determine the propriety or impropriety of questions and the arguments and remarks of counsel, and object thereto, if they tended to reflect discredit upon the plaintiff or stain her reputation. It is the province of the trial justice to control the conduct of counsel during the trial.   Suitors cannot be subjected to increased damages for a failure to interrupt proceedings in court or assume a duty incumbent on the trial justice.

*Pearce* v. *Stace*, 145 App. Div. 900, reversed.

(Argued February 11, 1913;  decided March 11, 1913.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered June 13, 1911, affirming a judgment in favor of plaintiff entered upon a verdict.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Edward W. Hatch* for appellant.   The court committed error in its numerous rulings upon questions of evidence and in portions of its charge, to which rulings and charge exceptions were duly taken by the defendant. (*Ives* v. *Ellis,* 169 N. Y. 85;  *Harkins* v. *Q. Ins. Co.,* 106 App. Div. 170;  *Dilleber* v. *Home Ins. Co.,* 69 N. Y. 256; *Church* v. *Howard,* 79 N. Y. 415;  *Carlson* v. *Winterson,* 147 N. Y. 652;  *McKane* v. *Howard,* 202 N. Y. 181.)

*Harlan W. Rippey* and *Louis E. Fuller* for respondent.   The original promise to marry was a continuing promise, as to the performance of which no definite time was ever fixed, and the Statute of Limitations did not commence to run until there was a breach of the promise or a reasonable time had elapsed thereafter without fulfillment.   (*Imperial Bldg. Co.* v. *Woodbury,* 59 N. Y.

Supp. 186; *Manchester* v. *Braedner,* 107 N. Y. 346; *Greenly* v. *Shelmidine,* 83 App. Div. 559; *Wade* v. *Kalbfleisch,* 58 N. Y. 282; *Rime* v. *Rater,* 108 Iowa, 61; *Chamess* v. *Cox,* 131 Ind. 118; *Hanson* v. *Elton,* 38 Minn. 493; *Littler* v. *Smiley,* 9 Ind. 116; *Blackburn* v. *Mann,* 85 Ill. 222.) No error was presented in admitting opinion evidence that plaintiff was attached to defendant. (*Blake* v. *People,* 73 N. Y. 586; *McKee* v. *Nelson,* 4 Cow. 355; *Tobin* v. *Shaw,* 45 Me. 331; *Brownell* v. *People,* 38 Mich. 732; Jones on Evidence [2d ed.], § 360.) There are no other alleged errors which require a reversal of the judgment. (*Wilcox* v. *Green,* 23 Barb. 639; 1 Pars. on Cont. 545; *Chellis* v. *Chapman,* 125 N. Y. 214; *Crosier* v. *Craig,* 47 Hun, 83; 130 N. Y. 661; *Smith* v. *N. Y. A. L.,* 121 App. Div. 60; *Blake* v. *Meyer,* 110 App. Div. 735; *Boynton* v. *Kellogg,* 3 Mass. 189.)

HOGAN, J. This action was brought to recover damages for a breach of promise of marriage.

The complaint alleged an express contract made between the parties in or about the year 1880 (amended on the trial to read 1884) to be performed within a reasonable time thereafter and renewals of the contract at the request of the defendant until the spring of 1904, when "defendant did agree to marry plaintiff and plaintiff agreed to marry defendant immediately thereafter" and a breach of said contract on the 13th day of September, 1904. A further allegation in the complaint charged that defendant, after the mutual promises to marry, did persuade plaintiff to yield to his demands, that she was seduced by him, and illicit relations continued between them during the years following.

A second cause of action alleged an express contract made between the plaintiff and defendant in the spring of 1904, omitted reference to improper relations charged in the first count of the complaint, and alleged a breach of that contract September 13, 1904.

The answer of the defendant denied the making of the contracts or the breach thereof, and for a further defense alleged the Statute of Limitations as a bar to the cause of action.

At the time of the trial of the action, plaintiff was 50 years of age, the defendant was eight or nine years her senior. Plaintiff testified that in 1883 she was engaged to one Crean, who resided in Canada, which fact was known to defendant; that shortly after their acquaintance defendant accompanied her to places of amusement, on walks and carriage drives, and asked her to break her engagement with Crean which she did early in 1884, and thereupon, in the fall or winter of 1884, the defendant promised to marry her "inside of a year" and she said "she would marry him." The testimony of plaintiff referred to, covers the evidence adduced tending to show mutual promises between the parties in 1884. This evidence, alone, would not permit a recovery by plaintiff for a breach thereof, in view of the Statute of Limitations pleaded by defendant. To avoid the statute, plaintiff asserted numerous postponements of marriage and renewals of the promise by defendant to marry her. From the evidence it appears that illicit relations between the plaintiff and defendant continued from at least 1885 to and including a portion of the year 1904.

Under the second count of the complaint, she testified that in the spring of 1904 she had some talk with the defendant in regard to marriage. "At that time defendant said he would marry me positively in the following Fall, to which I replied that I would be very glad to marry him."

The defendant denied any contract or promise of marriage or any promise upon his part at any time to marry the plaintiff.

The trial justice properly charged the jury "if it appears that the original promise was made as stated and was not renewed, the cause of action therefor would

have been barred by the Statute of Limitations in 1891, but if the promise was kept alive so that by mutual consent it stood as originally made, except its time of fulfillment was extended, then the Statute of Limitations would not begin to run against it until there was an ending and passing by of the time of fulfillment, \* \* \* if the jury should find that the defendant agreed in the Spring of 1904 to marry the plaintiff and broke the agreement in the Fall of that year the Statute of Limitations would not run against that particular cause of action." Upon the subject of relations between the parties, "if the jury should find from the evidence that intercourse between the plaintiff and defendant was had prior to the primary engagement in 1884 (as was claimed by defendant) plaintiff could not recover anything by reason of the continuance of that intercourse between herself and defendant, \* \* \* that if the seduction antedated the promise of marriage, plaintiff could not recover anything by reason of the seduction; the promise must have either been concurrent with or before the seduction."

Exceptions appearing in the record raise important questions of law. One F. W. Clark, a brother-in-law of plaintiff, testified to an acquaintance with the parties for a number of years, and to declarations of the plaintiff, her acts, conduct and physical appearance, including her conduct, mental and physical condition at the time of the alleged breach of the contract in September, 1904. He was asked: "Q. Mr. Clark, will you state whether or not you formed any opinion as to whether or not plaintiff was attached to the defendant?" Objected to, overruled, exception. "A. I certainly did." "Q. From your association with the plaintiff, during the period of time she was a member of your family, and from your observance of her whole deportment during all that time, and also from your observance of her deportment and conduct at the time of the breaking of the engagement, what do you say, as to whether or not, in your opinion,

plaintiff was attached to the defendant?" "A. In my opinion she was attached to Mr. Stace." Two other witnesses were called and like testimony was given by them over objection of defendant. In reply to the question "State what opinion you formed" one answered, "They seemed to have the greatest affection for one another so far as I could see," and the second answered, "I supposed they had a mutual attachment one for the other."

In support of the admissibility of the evidence referred to counsel for respondent called attention to some cases which he claimed supported the admission of the evidence noted. We do not assent to the argument. *M'Kee* v. *Nelson* (4 Cowen, 355) was especially relied upon. In that case three witnesses were permitted without objection to express their opinions that the plaintiff was, from what they saw, much attached to the defendant. Afterward like questions were propounded, to which objection was made, overruled and answers admitted, and though the questions were held proper, still the court said that the objection came too late as the same question had already been answered by different witnesses. The case was decided in 1825, prior to the time when parties to an action were permitted to testify in their own behalf and when the courts by reason of such inhibition were liberal in the admission of evidence of that character, since the only mode of proof was by the testimony of third parties. Since the amendment to the law enabling parties to testify, the courts of this state have enforced a more rigid rule as to the admission of opinion evidence so called, and have uniformly held: "Where the facts can be placed before a jury, and they are of such a nature that jurors generally are just as competent to form opinions in reference to them and draw inferences from them as witnesses, then there is no occasion to resort to expert or opinion evidence." (*Ferguson* v. *Hubbell*, 97 N. Y. 507, 513; *Welle* v. *Celluloid Co.*, 186 N. Y. 319; *Schwander* v. *Birge*, 46 Hun, 66, approved in *Van*

*Wycklen* v. *City of Brooklyn*, 118 N. Y. 430; *People* v. *Smith*, 172 N. Y. 210.)

Here the question at issue was the existence of a mutual promise to marry. It was competent for plaintiff to show the attentions paid her by defendant, but manifestations of attachment can hardly be said to be uniform. To one individual the deportment and actions of the parties might appear as the conduct of an engaged couple; to another person the same deportment might seem but the indication of friendship. To allow witnesses to express opinions formed by them from observations of the actions of a man and woman keeping company would admit of opinion evidence that the deportment of the parties indicated the relation of a man towards his mistress. The admissibility of that class of evidence would hardly be asserted. It was for the jury to determine from the acts and conversations of plaintiff and defendant as narrated by the witnesses the inference to be drawn therefrom, and the admission of opinions formed by others was error.

Exceptions were also taken to the admission of evidence as follows: The witness Clark testified: "There was an occasion when some transaction took place between my family and Miss Pearce with reference to Mr. Stace calling there. I could not say positively when it was. I know there were different occasions." (The trial having taken place in December, 1909, the time spoken of by the witness was evidently 1899, and prior to the later renewal of the alleged contract of 1884.) He was then asked, "What was the transaction. Tell us all about it?" Objected to, overruled, exception. "A. Why, the people were very much discouraged with Carrie on account of her having kept company so long with Mr. Stace without becoming married. For that reason Carrie was told she must find another place to board. As a result of that she left our home." "Q. Previous to the time that Miss Pearce was told she would have to look for another place

to live, was the subject of her courtship and engagement to Stace talked over in your family ?" Objected to, overruled, exception. "A. Yes, sir." "Q. At the time Miss Pearce was told she would have to find another place to stay, was anything said at that time as to whether or not she was engaged to Stace ?" Objected to, overruled, exception. "Yes sir, there were some statements made." The witness was then permitted to testify to the statements of plaintiff as to what was said to her by defendant in reference to his intention to marry her, and the reasons given by him for not having married her, as well as excuses she made to her family for not marrying him, and that nearly every time she saw them the matter was brought up; that while she was thus excusing herself to the witness for not having married defendant, she was hysterical, nervous and in a generally dilapidated condition of health, she would go to her room and cry, go without her meals, and say her friends had all deserted her or wanted to leave her, or something to that effect.

Another witness was asked: "Q. Do you remember any other instance when Miss Pearce told you of any excuses that Stace had given for not marrying her?" Objected to, overruled, exception, and a motion made to strike out the answer, denied and exception taken. "A. She told me at different times that he expected to marry her in the fall or in the spring. I can only repeat what I have said, that on occasions when I have been with her she made the remark that Mr. Stace would probably marry her in the spring, or when the spring come, or it might be in the fall, from time to time."

This evidence was clearly incompetent. The feelings and actions entertained by third parties towards the plaintiff, whether well founded or otherwise, are not binding upon the defendant. The remaining evidence consisted of self-serving declarations of the plaintiff made in the absence of defendant and was improperly admitted

in evidence for any purpose. (*Martin* v. *N. Y., N. H. & H. R. R. Co.,* 103 N. Y. 626; *Kennedy* v. *Rochester City & Brighton R. R. Co.,* 130 N. Y. 654; *Connolly* v. *Brooklyn Heights R. R. Co.,* 179 N. Y. 7.)

At the close of the charge counsel for plaintiff made the following requests:

"I ask you to charge the jury, that if they find that the defendant has spread upon the record any matters in defense of the action which are scandalous, or tend to reflect discredit upon the plaintiff, or stain her reputation, and if such matters are untrue, that such circumstances may be considered by the jury and may be availed of by them to enhance damages.

"The Court: I have already charged that, and I so charge.

"Counsel for plaintiff: That if they find that the defendant has authorized his counsel to make scandalous charges and statements, either in his opening, or elsewhere in the case, which tend to reflect discredit upon the plaintiff or stain her reputation, and if they further find that such charges were made and were scandalous and were untrue, under all the facts and circumstances in the case, and were designed to reflect discredit upon the plaintiff, or stain her reputation, the jury may consider such circumstances on the question of damages, if they find the plaintiff is entitled to recover anything.

"The Court: Yes, if you find that the defendant authorized anything of that kind upon the part of counsel, or permitted it without objection.

"Mr. Peck: I except to your Honor's last statement, as to defendant's responsibility for what counsel may say in the trial of a case.

"The Court: I limited it entirely to a case which had either been authorized by the defendant or permitted without objection in his presence." To which proper exceptions were taken by counsel for defendant.

In actions for breach of promise attacks on the plain-

tiff's character by allegations in the answer of the defendant of misconduct and lewdness on her part, or by proof of such matters on the trial when made in *bad faith* may be considered by the jury in enhancement of damages. (*Southard* v. *Rexford*, 6 Cow. 254; *Kniffen* v. *McConnell*, 30 N. Y. 285; *Thorn* v. *Knapp*, 42 N. Y. 474.)

The instruction, however, was too broad. The fact that charges against plaintiff's conduct which a defendant may seek to prove are untrue alone would not be ground for aggravating the damages. To have that effect it is also necessary that the charges should be made in bad faith. (*Distin* v. *Rose*, 69 N. Y. 122.) This limitation was not pointed out in the charge of the trial justice. It is also to be remarked that the evidence in the case relative to plaintiff's conduct with other men was introduced by the plaintiff.

The effect of the charge secondly above made as requested, namely, that if counsel for defendant in the opening or closing of the case, or at any time, made scandalous charges or statements against the plaintiff or detrimental to her reputation, authorized by the defendant or permitted without objection in his presence, would prevent counsel for a defendant in the presentation of the case to the jury from characterizing the evidence of the plaintiff and her credibility as a witness, lest increased damages should follow. Such a rule would likewise require a defendant, during the course of the trial and the opening and submission of the case to the jury, to determine the propriety or impropriety of questions asked, arguments before the court and jury by his counsel, and to interrupt the proceedings by objections if remarks tending to reflect discredit upon the plaintiff or stain her reputation were made by his counsel; otherwise be subjected to increased damages.

The charge made was erroneous. It is the province of the trial justice to control the conduct of counsel during the trial. Suitors cannot be subjected to increased dam-

ages for a failure to interrupt proceedings in court or assume a duty incumbent on the trial justice.

Other exceptions appear in the record, but as a new trial must be ordered it is unnecessary to refer to them.

The judgment should be reversed and a new trial ordered, costs to abide the event.

CULLEN, Ch. J., GRAY, WILLARD BARTLETT, CUDDE-BACK and MILLER, JJ., concur; CHASE, J., concurs in result.

Judgment reversed, etc.