CORA MAUDE CLARKE, Respondent, v. JOHN LEON MARTIN, Appellant.

*Contract — breach of promise to marry — damages — punitive damages.*

Appeal from a judgment entered on the verdict of a jury, and from an order denying a motion for a new trial. Present — Clarke, P. J., McLaughlin, Laughlin, Dowling and Page, JJ.; Dowling, J., dissented.

Judgment and order reversed and new trial ordered, with costs to appellant to abide the event, unless the plaintiff stipulate to reduce the verdict to the sum of $25,000, in which event the judgment as so reduced and the order appealed from are affirmed, without costs. No opinion. Order to be settled on notice.

DOWLING, J. (dissenting): I am unable to concur in the conclusion reached by the majority of my associates, because I believe that error was committed by the trial judge in his charge to the jury which requires the reversal of the judgment. The action is for breach of a promise of marriage. The defendant in his answer denied all the allegations of the complaint save that of his marriage to Maude Canfield Eddy, and then for a partial defense and by way of mitigation of damages he set up: (1) That plaintiff prior to, at and subsequent to the time of the promise to marry, had accepted money for her support from other men, lived in different places under their protection, falsely represented to defendant her sources of income, associated with evil characters and lived under other names than her own; (2) that prior to, at and subsequent to the time of the promise to marry, plaintiff was intimate, and had relations with one Hoffmeister and took trips with him and others to various places, remaining over night with him thereat, and that during said time she was not ill or suffering from any mental or physical shock as the result of defendant's breach of his promise to marry. Defendant served an original and an amended bill of particulars. By these it was disclosed that the person defendant referred to in the first partial defense as the one who had contributed to her support was Eugene Le Grove, five places being specified where she was charged to have lived under his protection and at his

expense; that plaintiff had represented to defendant that her means of livelihood during this period came from the estate of Mrs. M. E. Merritt; that the evil characters with whom she had associated were gamblers named Ludlum, Barton and O'Brien, and a woman named Alexander; and five names were given under which plaintiff was claimed to have lived. As to the second partial defense, the amended bill of particulars set forth the details of plaintiff's alleged relations with Hoffmeister. Upon the trial defendant introduced proof as to plaintiff's alleged relations with Le Grove; as to her misrepresentation of the source of her monthly income, which she claimed came from the estate of Mrs. Merritt, but really proceeded from Le Grove; and as to the names by which she had been known. He also called a witness in the endeavor to prove her relations with Hoffmeister, but was unsuccessful in eliciting any favorable testimony from him, and plaintiff on cross-examination denied any such relationship. Defendant made no effort to prove that plaintiff associated with the other persons named in his bill of particulars, and on cross-examination tried to put the responsibility for the inclusion of the names on his counsel, saying he was sorry he had made a mistake and signed the papers, and that was true as to all the names, more or less, but particularly as to O'Brien. In his charge the learned trial court, after stating the law as to compensatory damages, took up the question of exemplary damages. He began by saying: "Besides compensatory damages the court, in a proper case, allows exemplary or punitive damages." He then proceeded to tell the jury that if plaintiff's abandonment by defendant was wanton and ruthless, or if defendant was actuated by bad motives, "then the larger measure of damages, not only by way of compensation to the plaintiff, but by way of punishment to the defendant, is proper." After enlarging upon this, he further stated: "The defendant in this case has set up various things in his pleadings tending to cast reflection upon the plaintiff, in attacking her good character and her chastity." He summarized the charges against the plaintiff contained in the amended answer, and then said: "The rule of law is that where a person sets up in his pleadings things defamatory of the other party to the action in a case of this sort and does not offer any proof of such allegations, and does not seek to prove them, that the jury may take that into consideration in determining the damages to be awarded to the plaintiff." This obviously referred to the awarding of exemplary or punitive damages, with which the court was then dealing, and not with compensatory damages. The defendant's trial counsel, when he came to take his exception, mistakenly referred to the portion of the charge in question as "the matter of compensatory damages," but his colloquy with the court unmistakably demonstrates that he referred to the language quoted, and that both he and the court understood to what he was objecting. "Defendant's Counsel: I except to your Honor's charge with respect to the matter of compensatory damages, in so far as it relates to the matter of separate defense, in so far as it relates to the matter in mitigation of damages. The Court: The Court understands that you are referring to that part of the charge which speaks of the pleadings, what is set up in the answer?

Defendant's Counsel: That is what I except to, and I ask your Honor to charge the jury that they are bound to take into consideration the evidence of the witness, Mrs. Wright and Jones, as to the circumstances under which the defendant [plaintiff] lived, and as to the receipt of money from Mr. Le Grove. The Court: You are bound to take that testimony, gentlemen of the jury, as well as * * * the testimony of all the other witnesses, into consideration. Defendant's Counsel: And to judge that in accordance with the ordinary probabilities and their ordinary daily experience. The Court: I have instructed the jury and I so instruct them again." There is no force in the contention of plaintiff's counsel that the objection referred only to the charge upon the subject of compensatory damages, for the references to the answer appearing early in the charge were made before a word was said as to compensatory damages, and in the charge as to mere compensation no mention was made of the allegations of the answer. Moreover, that plaintiff's trial counsel also understood the objection to refer to exemplary or punitive damages (and not to compensatory damages) is shown by his request to the court for an additional charge on the subject of exemplary damages, which will be hereafter referred to and which was the last word said to the jury on the issues of the case. Treating the objection, therefore, as testing the correctness of the rule of law laid down by the court for the recovery of exemplary or punitive damages because of the charge against plaintiff's character contained in the answer, the charge was incorrect because it failed to make defendant's bad faith in interposing the charges the test for his liability for such damages. The consequences to a defendant from spreading upon the record charges reflecting upon the plaintiff were laid down in *Southard* v. *Rexford* (6 Cow. 254, decided in 1826), which is the starting point for our law upon the subject. That was an action for breach of a promise of marriage. The plea was the general issue, with notice that the defendant would prove in his defense that the plaintiff had at various times, and with various persons, specifying them, committed fornication after the alleged promise. On appeal, in passing on the court's charge with reference to the failure to prove the scandalous matter spread upon the record, the court said (p. 261): "Where the defendant attempts to justify his breach of promise of marriage, by stating upon the record as the cause of his desertion of the plaintiff, that she had repeatedly had criminal intercourse with various persons, and fails entirely in proving it, this is a circumstance which ought to aggravate the damages. A verdict for nominal or trifling damages, under such circumstances, would be fatal to the character of the plaintiff; and it would be matter of regret indeed, if a check upon a license of this description did not exist in the power of the jury to take it into consideration in aggravation of damages." *Kniffen* v. *McConnell* (30 N. Y. 285) was an action for breach of a promise of marriage. The case of *Southard* v. *Rexford* (*supra*) was cited with approval and Mr. Justice Ingraham said: "The rule is undoubtedly founded upon the fact that the justification is placed upon the record and that it will ever remain there as a reiteration of the charge against the plaintiff, and with such an answer on the record, a trifling verdict would not show that such charge was unfounded. The

same rule applies to actions for libel and slander." He thought, however, that as justification of the breach was a proper defense, it was anomalous to have a failure of proof of such defense ground for aggravation of damages. But in this the majority of his associates did not agree with him, and as he says (p. 293): "For the cause above stated, as to the charge that the attempt to prove facts imputing want of chastity to the plaintiff. which failed, was an aggravation, I think a new trial should be ordered; but a majority of the court are of the opinion that the charge was not erroneous in this respect, and that attempting to give such matters in evidence, though not set up in the answer as a defense, if not made out, warrants the charge to the jury that it should aggravate the damages." *Thorn* v. *Knapp* (42 N. Y. 474) was an action for breach of a promise of marriage. The defendant in his answer alleged that at the time of the alleged promise plaintiff was a common prostitute, of bad character, an unchaste woman, and had been guilty of illicit intercourse with various persons. Chief Judge Earl cited *Southard* v. *Rexford* with approval, and proceeded to sustain its doctrine upon principle and analogy. The defendant had not attempted to prove upon the trial the allegations of his answer, and the court had charged: "Where a defendant in his answer attempts to justify his breach of promise of marriage by stating therein, and thus placing upon the record, as the cause of his desertion of the plaintiff, that she has had criminal intercourse with various persons, and fails to prove it, the jury have a right to take this circumstance into consideration in aggravation of the damages to which the plaintiff may be entitled." The correctness of this chrage was the only question in the case. The Court of Appeals affirmed the judgment and declared the charge free from error. Judge Smith wrote a concurring opinion. *Distin* v. *Rose* (69 N. Y. 122) was an action in slander, but in that Chief Judge Church (at p. 128) said there was no difference in principle between actions in breach of promise or slander. There the defendant by his answer reiterated the slander upon a plaintiff, charging her with unchastity. The chief judge said (p. 127): "The answer alleged in express terms that the charge was true, and then specified facts that she had lived with a man as his wife, knowing that he had at the time another wife living. If there was an entire failure of proof to sustain the charge, and the jury believed that it was inserted in the answer wantonly or maliciously, and without probable cause for believing it true, they might consider it upon the question of damages, and it was right, therefore, to decline, as matter of law, to charge that they could not so consider it. * * * The Code has made this change in the law as it previously stood, that although the justification is not sustained, yet the facts adduced for that purpose may be used in mitigation of damages, if they tend to show good faith or a belief in the truth of the words uttered. But when there is a total failure of proof tending in this direction and the circumstances evince malice in reiterating the slander in the pleadings, it is allowable for the jury to take that circumstance into consideration. (*Thorn* v. *Knapp*, 42 N. Y. 474, and cases cited.) * * * This rule should be applied with care and moderation, and I think should be confined to cases of bad faith

in incorporating the justification in the pleading, and this can scarcely be said to be true under the Code, when the facts proved ought legitimately to go in mitigation of damages, because it seems incongruous to say that a failure to establish a justification may enhance the damages, and yet the facts proved under it may mitigate them." *Cruikshank* v. *Gordon* (118 N. Y. 178) was an action in slander for words imputing professional incompetency to a physician. The defendant in his answer in mitigation of damages alleged that plaintiff was not "sufficiently nor ordinarily skillful nor competent as a physician, and has no reputation as a competent physician, and never had." Defendant alleged no evidence in support of this allegation. The trial court had charged the jury: "If you believe the imputation in the answer upon the plaintiff's professional competency is unproved, and was inserted maliciously and without probable cause, you may consider such imputation in aggravation of the damages. They had a right to plead that issue. If they fail on it and it was inserted in good faith, that would not tend to enhance the damages. But it remains on record, and if you find that it was put in wantonly and without cause, then you may consider that an aggravation of damages." Chief Judge Follett said, after citing with approval the cases hereinbefore set forth: "It has been uniformly held, before and since the Codes, that when a defendant pleads in justification of the breach of his promise to marry that the plaintiff has become unchaste and on the trial makes no attempt to prove his plea, the fact may be considered by the jury in assessing the damages. * * * None of the cases cited are decisive of the question under consideration, for, as is urged by the learned counsel for the appellant, the allegation quoted from the answer falls short of a justification, and is, at most, but a plea in mitigation. It is urged that pleas in mitigation being authorized by the Code, cannot be considered on the question of damages. The interposition of pleas in justification is authorized by law, nevertheless, as we think we have shown, courts have quite uniformly held that if they were interposed in bad faith, the jury might consider the fact on the question of damages. The authorization by the Code, of pleas in mitigation is not a license for their interposition in bad faith, and for the purpose of injuring the reputation of the plaintiff, and when they are interposed for that purpose, the fact may be considered by the jury." *Holmes* v. *Jones* (121 N. Y. 461) was an action in libel. The answer set up, among other things, that plaintiff, an undertaker, was addicted to the excessive use of liquor and conducted funerals while under the influence of intoxicants. Upon the trial plaintiff's attorney, in summing up, read to the jury, over defendant's objection, the part of the answer containing the attack upon plaintiff's character. The matter had been set up in the answer in mitigation of damages, but no evidence had been given to prove the allegations. Judge Earl said: "The judge charged the jury, in substance, that if the defendant failed to establish the justification of the libel set up in the answer, they could determine whether it was set up in good or bad faith, and that if they found it was set up in bad faith they could take that into consideration in estimating the damages to be awarded by them, and in this portion of his charge there was no error." (Citing *Distin* v. *Rose*

and *Cruikshank* v. *Gordon, supra.*)   *Pearce* v. *Stace* (207 N. Y. 506) was an action for breach of promise of marriage.   The answer contained no attack upon the character of the plaintiff, but upon the trial questions were asked reflecting upon her morality.   At the close of the court's main charge counsel for plaintiff made the following requests: "I ask you to charge the jury, that if they find that the defendant has spread upon the record any matters in defense of the action which are scandalous, or tend to reflect discredit upon the plaintiff, or stain her reputation, and if such matters are untrue, that such circumstances may be considered by the jury and may be availed of by them to enhance damages.   The Court: I have already charged that, and I so charge.   Counsel for plaintiff: That if they find that the defendant has authorized his counsel to make scandalous charges and statements, either in his opening, or elsewhere in the case, which tend to reflect discredit upon the plaintiff or stain her reputation, and if they further find that such charges were made and were scandalous and were untrue, under all the facts and circumstances in the case, and were designed to reflect discredit upon the plaintiff, or stain her reputation, the jury may consider such circumstances on the question of damages, if they find the plaintiff is entitled to recover anything.   The Court: Yes, if you find that the defendant authorized anything of that kind upon the part of counsel, or permitted it without objection.   Mr. Peck: I except to your Honor's last statement, as to defendant's responsibility for what counsel may say in the trial of a case.   The Court: I limited it entirely to a case which had either been authorized by the defendant or permitted without objection in his presence."   To which proper exceptions were taken by counsel for defendant.   Judge Hogan, writing for the court, said (p. 514): "In actions for breach of promise attacks on the plaintiff's character by allegations in the answer of the defendant of misconduct and lewdness on her part, or by proof of such matters on the trial when made in *bad faith*, may be considered by the jury in enhancement of damages.   (*Southard* v. *Rexford*, 6 Cow. 254; *Kniffen* v. *McConnell*, 30 N. Y. 285; *Thorn* v. *Knapp*, 42 N. Y. 474.) "   It is the contention of the respondent's counsel that because of the presence of the comma after the word "part," the words "when made in bad faith" limit the defendant's liability only in cases where the attack on plaintiff's character is made upon the trial, and not when it is made in the answer.   I can discover no purpose to so restrict the rule, or to set aside the doctrine of the earlier cases cited where bad faith in interposing the defense is made a necessary element to entitle plaintiff to recover exemplary damages for the presence of the defamatory matter in the answer.   Nor was that question before the Court of Appeals in the *Pearce* case, where the defamatory matter was not contained in the answer.   I think the fair meaning of the court's opinion is that, whether the attack on plaintiff's character was made in the answer or on the trial, the jury must still find that it was made in bad faith before plaintiff can recover enhanced or exemplary damages.   That this is so is proven by the sentences immediately following: "The instruction, however, was too broad.   The fact that charges against

plaintiff's conduct which a defendant may seek to prove are untrue alone would not be ground for aggravating the damages. To have that effect it is also necessary that the charges should be made in bad faith. (*Distin* v. *Rose*, 69 N. Y. 122.) This limitation was not pointed out in the charge of the trial justice." In *Distin* v. *Rose*, as has already been shown, the attack on plaintiff's character was reiterated in the answer. So that I deem it clear that no repudiation of the rule therein laid down was intended by the Court of Appeals, and plaintiff must still prove bad faith on defendant's part in making the attack upon her character in the answer, before she can recover exemplary damages. The charge of the trial court in this particular was, therefore, error, requiring a reversal. Nor can I agree with the conclusion reached by the majority of my associates, that this error was cured by the final charge of the court. Evidently appreciating that the exception taken by defendant's counsel hereinbefore quoted at length, referred to the question of exemplary damages and was a good exception, plaintiff's counsel said: " As an extra precaution I ask your Honor to instruct the jury that this question of exemplary damages, that if those charges were made in bad faith by the defendant, that we can recover exemplary damages. The Court: You refer to the answer? Plaintiff's Counsel: Yes, and the bill of particulars. The Court: If the allegations in the answer which I have read you, gentlemen of the jury, in part were made, you find, in bad faith, and without a proper motive, then you may take that into consideration. Defendant's Counsel: I respectfully except to your Honor's charge in that regard." The jury then retired. Giving this additional charge a reasonable interpretation, it was an additional ground upon which exemplary damages could be awarded against the defendant. It did not withdraw the part of the charge to which exception had already been taken; it did not by its terms modify, limit or reduce it. (*Willard* v. *Press Pub. Co.*, 52 App. Div. 448.) It did not tell the jury that they could not award exemplary damages for the charges in the answer unless the defendant had interposed them in bad faith. It nowhere suggested that they must not take those charges into consideration unless they found them to have been made in bad faith. As I view it, it increased the defendant's liability to respond in damages, instead of reducing it. The trial court did not even charge in the words of the request, but apparently left the jury free to regard the defendant's bad faith in making the charges as additional cause for increasing the verdict against him, in addition to all that had already been charged. I, therefore, favor a reversal of the judgment and the granting of a new trial, with costs to appellant to abide the event. McLaughlin, J., concurred